W. D. JONES *v.* STATE OF TENNESSEE.

(*Nashville,* Dectember Term, 1954.)

Opinion filed March 11, 1955.

FRANK P. WHITE, of Lewisburg, for plaintiff in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is an appeal from a conviction in two cases of passing a worthless check with intent to defraud. The jury assessed the defendant's punishment, imposing a fine of $25 and 30 days in the workhouse in each case. The trial judge ordered that the sentences run consecutively.

When the cases were called for trial the defendant's counsel moved the court to quash each of the indictments on the ground that there was no averment that said checks, or either of them, "was presented to the bank". This motion was overruled by the court and his action was assigned as error in the motion for a new trial and is the basis for an assignment of error in this Court.

Other assignments of error are:

(2) The evidence preponderates in favor of the defendant's innocence.

(3) "It was error for the Court to permit the attorney for the State, over the objection of the defendant, to ask defendant if he had not been arrested on numerous occasions and sometimes indicted for such crimes as public drunkenness, affray and other crimes and each time had managed to get out of or get loose from such charges."

(4) "It was error for the Court to overrule the objection of defendant to the question propounded by the State, to wit: 'W. D., I ask you if you have not been indicted before for passing bad checks and that all were *nolle prossed?*' "

■ There is no merit in the first assignment of error, complaining that the indictments failed to charge that the checks were presented to the bank for payment. The State's counsel has correctly noted that there is no minute entry showing that the court acted on these motions. We concur in the insistence "that the bill of exceptions cannot be looked to to supply this defect." *Diamond* v. *State,* 123

Tenn. 348, 131 S. W. 666; *Gray* v. *State,* 194 Tenn. 234, 250 S. W. (2d) 86.

*(2)* In the present state of the record we have no ruling by the trial judge on the merits of the motions. We are hence constrained to hold that the defendant went to trial on the merits of the case, and the alleged defect in the indictments, if any, was cured by the verdict. *French* v. *State,* 159 Tenn. 451, 19 S. W. (2d) 276.

The evidence introduced at the trial for both the State and the defendant appears in narrative form, and is correctly summarized on the State's brief, as follows:

"Dorothy Cole testified for the State that on September 21, 1953, she, as manager of the Riverside Cafe in Columbia, cashed a $10.00 check for plaintiff in error, upon his representation that the check was good and that he had money in the Bank to pay the same. She further testified that on October 3, 1953, she cashed another $10.00 check for plaintiff in error, being unaware at the time that the first check was worthless. She was somewhat confused as to the time the first check was returned by the Bank, first stating that it was returned four or five days after she cashed it, and next testifying that the first check did not come back until the second check did. It was shown by other proof that the first check was presented to the Bank on September 21st and again on October 5th. When this check was presented there was some money deposited to the account of plaintiff in error but not a sufficient amount to cover the check. It was shown that both checks had been presented for payment but that neither had been paid by the drawee Bank.

"Plaintiff in error admitted passing checks in question but insisted that he acted without fraudulent intent. He claimed that he was drunk on both oc-

casions and that he purchased whiskey from Dorothy Cole with part of the money that he received from the checks. He stated that when he cashed the first check he thought he had sufficient funds to cover it. He further testified that when he cashed the second one, Miss Cole advised him that the first one had been returned. It is his insistence that at that time an agreement was entered into for her to hold both checks until he could take them up later.''

The second assignment of error presents a controversial issue of fact, i.e., whether or not there was an intent to defraud by defendant in cashing the checks in question.

The constituents of the offense are set forth in Code Section 11157, and are the following: (1) obtaining money on the check; (2) the failure of the drawee to pay the check after demand made; and (3) the subsequent failure of the drawer to pay it after written notice shall have been mailed to him at his last known address. *State* v. *Crockett*, 137 Tenn 679, 195 S. W. 583. The statute further provides that the fact that the drawer of the check did not have sufficient funds on deposit to pay the check when presented ''shall be prima facie evidence of fraudulent intent.'' The record discloses without dispute that the defendant did not have sufficient funds to his credit to pay these checks when they were presented. The defendant testified he thought he had enough money in the bank to pay the checks.

It seems clear from the foregoing provisions of the statute that the drawer or maker of a check or draft when there are not sufficient funds to take care of it, is not subject to criminal prosecution until the payee of the check has made seasonable demands for payment and a refusal

or failure to take up the said check, after written notice mailed to his last known address.

The prosecutrix in the instant case gave the notice as required. The defendant testified "that when he asked Dorothy Cole, the prosecutrix, to cash the second check, she advised him that the first one had not been paid; that he then told her that he hadn't sufficient money at the time and if she would *hold both checks* he would take them up later, *to which she agreed."* He further testified "that his failure to keep his promise was due to his inability to get employment and make sufficient money to pay same."

The prosecutrix made no denial that she agreed with the defendant to hold the checks as he had requested. If this agreement was had by the parties their relationship became that of creditor and debtor. A written notice to the defendant, as provided by the statute, following the agreement to indulge the defendant, would not be available to show fraudulent intent. In other words by virtue of the agreement the prosecutrix elected to hold the defendant civilly and not criminally liable.

█ We think there is material evidence sufficient to take the case to the jury on the controversial issue of fraudulent intent in passing the first check to the prosecutrix. But the evidence preponderates in favor of defendant's innocence of passing the second check with fraudulent intent. We base this assertion on the fact that the first check had been returned by the bank to the prosecutrix and it was in her possession when she cashed the second check at defendant's request.

The first check was cashed at defendant's request on September 21, 1953, and the second one on October 3, 1953. Both checks were drawn upon the Commerce Union Bank of Columbia, Tennessee. The testimony of Mr. Edwin Denton, Assistant Cashier of the Bank and witness for the

State, shows beyond question that the first check was dis-honored for lack of sufficient funds on September 21, 1953 (although defendant had some money to his credit) and returned at once to the Middle Tennessee Bank; and "according to another notation on the back of said check was again presented to his bank and returned to the Middle Tennessee Bank on October 5, 1953." Upon being asked if it was the policy or custom of banks to hold checks for several days without notifying the payee, he replied "that he could not say about other banks, but that his bank did not, but returned them immediately."

The prosecutrix, Dorothy Cole, was confused as to when the first check was returned by the bank, first stating "that the first check did not come back until the second did." Her testimony contradicts the record and testimony of Mr. Denton. She gives no reason, and none can be reasonably conceived, why the first check would be held by the bank from September the 21st until October the 3rd when the second check was presented for payment.

We are fully convinced from the evidence that the first check had been dishonored and was in possession of Dorothy Cole when she cashed the second check in question. This being true, she knew the defendant was without funds and consequently could not consistently claim that the defendant was guilty of any fraudulent intent when she cashed the second check at his request. We are not at all satisfied with the verdict and sentence imposed as applied to the second check in question. As to that offense the Court recommends a nolle prosequi.

The judgment on the first indictment is reversed and remanded for a new trial for the following reasons: the trial judge was in error in not sustaining the defendant's objection to the question propounded by the State's counsel on cross examination, "W. D., I ask you if you

have not been indicted before for passing bad checks, and that all were nolle prossed?''; that it was error for the State to ask the defendant ''if he had not been arrested on numerous occasions and sometime indicted for such crimes as public drunkenness, affray and other crimes and each time had managed to get out of or get loose from such charges.''

We readily concede that it is proper on cross examination to question the defendant as to his guilt of offenses involving moral turpitude for the purpose of affecting his credibility. *Zanone* v. *State*, 97 Tenn. 101, 36 S. W. 711, 35 L. R. A. 556, and cases cited. But questions as to indictments in which the accused was acquitted, or a *nolle prosequi* had been entered by the Attorney General, are inadmissible for any purpose. In *Ryan* v. *State*, 97 Tenn. 206, 36 S. W. 930, 932, it was held, opinion by Mr. Justice McAlister for the Court:

> ''We think, however, that the court was in error in permitting the jury to consider, for any purpose, records of indictments in cases in which the defendant had been acquitted, or a *nolle prosequi* had been entered by the attorney general. When it was developed by the records that the defendant had been acquitted of some of the charges, and that other indictments against him had been dismissed, the court should have withdrawn the evidence, and instructed the jury to disregard it.''

We think the questions were prejudicial. The questions constitute a blanket indictment of defendant as to his guilt of a number of unnamed offenses, and also of passing other ''bad checks'', at the same time conceding that in no case was there any justification for a criminal prosecution. The learned trial judge should have excluded

these questions and told the jury not to consider them for any purpose.

The assignments of error, three and four, are sustained. The judgment of the trial court is reversed, and the case remanded for a new trial.