WILLIAM CHARLES STUBBS

*v.*

STATE OF TENNESSEE.

393 S.W.2d 150.

(*Knoxville,* September Term, 1964.)

Opinion filed June 2, 1965.

Petition for Rehearing Denied August 16, 1965.

568

JAMES MITCHELL, DAVID TORBETT, Kingsport, DAVID S. HAYNES, Bristol, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, MARNE S. MATHERNE, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Stubbs was convicted of murder in the first degree and sentenced to confinement in the State penitentiary for a period of twenty (20) years and one (1) day. From this conviction he has seasonably appealed. Counsel representing Stubbs were appointed by the court and have done an excellent piece of work representing this man. For this representation this Court extends its sincere thanks.

This is the second trial of Stubbs. On July 14, 1954, he was convicted on four indictments of murder in the first degree of a Mrs. Holm, assault with intent to commit murder in the first degree upon her husband, and the kidnapping of two persons named. In this first trial he was sentenced to 99 years and 21 years for the murder and assault, both to run concurrently, and to not less than 2 years nor more than 10 years for the two charges of kidnapping, both to run concurrently with each other

but consecutively with the sentences for the murder and the assault. No motion for a new trial was filed and no appeal taken from the 1954 sentence. The trial court appointed a reporter in this 1954 trial, but her notes were not transcribed until February 20, 1964.

Stubbs filed a petition for habeas corpus in the United States District Court for the Middle District of Tennessee, and upon such hearing the United States District Judge held that the 1954 judgment was null and void and ordered the petitioner to be released and remanded to the custody of the Sheriff of Sullivan County "for further prosecution by the State of Tennessee," if it so desired. The present case was the trial on this remand.

A number of insistences are made on this appeal, the first being that the trial judge in the present trial should have quashed the indictments because the former judgments of conviction, which have been rendered null and void, amount to a violation of Stubbs' constitutional right to a speedy trial, which has been delayed for ten years, and, too, that it was error for the trial judge herein to admit in evidence the reading of a certain portion of the transcript of the testimony taken in 1954 of Mr. Holm, who at the present time is in Ekskogen, Sweden, and the testimony of his son, who gave certain testimony with reference to what certain witnesses would say.

At the second trial the State produced some fifteen witnesses who testified to the effect that Mrs. Holm died of gunshot wounds on June 11, 1964, and her husband was shot at the same time. The Holms were driving their car from their home in Texas through Tennessee and on up east as the first part of their journey for a visit to Sweden. They first encountered Stubbs at a roadside

park on Highway 11-W between Rutledge and Rogersville, where they had stopped to eat lunch.

According to the testimony of Stubbs he forced the couple at pistol point to get in the back seat of their automobile and he, with his gun in his left hand at times and with the gun on the front seat at other times, drove their automobile through Rogersville, Kingsport and Blountville, Tennessee. At a place on Highway 11-W about six miles west of Bristol, Tennessee, the plaintiff in error testified:

"It seems awful strange, but everything just seemed to be awful still and I remember a tree and it just seemed to come up just like that in a clear focus, but in a reddish haze. I mean there was no pain or nothing * * * I felt a sharp pain that seemed to start in my head and go all the way down through me and I reached up with both hands and heard this loud roar, bang * * * Stuff started down my face and down my shirt and all that I could think of that he has got the gun * * * I just went outside through the car door (onto the highway) * * * I got up and started running to get away from that area * * * (because) He still had the gun."

Stubbs admitted that a man pointed his finger at him and said, "That is the one," while he was in a hospital room, but he didn't know him. He denied any knowledge that Mrs. Holm was dead or that Mr. Holm was injured and denied shooting Mrs. Holm.

The bullet entering the body of Mrs. Holm severed the spinal cord. Mr. Holm suffered two bullet wounds, one just below the left eye and another under the nose. One bullet lodged in the neck and the other in the pharnyx.

Both bullets were removed. A 6-shot .32 calibre Smith and Wesson revolver with blood on it was found on the floor board of the back seat of the car.

Three Highway Patrolmen and a Police Investigator of Bristol testified that they were present when Stubbs was taken to the hospital room occupied by Holm in the evening of June 11, 1954. One of these officers said that Holm said, "that is the man that shot me and killed my wife." Another officer testified that Holm said, "That is the man that killed my wife and shot me" while pointing at Stubbs. Another officer said, "Mr. Holm pointed his finger at him (Stubbs) and said, yes, sir, he said that is the man that killed my wife and shot me." In other words, the identification of Stubbs as the man who committed this crime was ample and sufficient. It was likewise shown that Mr. Holm was perfectly normal and competent at the time he made this identification.

The testimony of a witness, who had died since the first trial in 1954, was introduced from the transcript, and he said that he was driving toward Blountville on Highway 11-W and saw an automobile coming up the road wobbling, going east, and before it went off the road, a man jumped or fell out from the left side of the car onto the highway. He said that he would have hit Stubbs if he had not slowed down, and Stubbs then whirled, ran back toward the car, jumped a fence, ran through a field, and that he watched him until he went out of sight.

■ Identification is a question of fact for the jury. Wharton's Evidence in Criminal Cases, 11th Ed., sec. 935, page 1637, sec. 936, page 1637.

■ Of course, in this case as in all other criminal cases in this State, the credibility of various witnesses

is exclusively for the jury and is settled by their verdict. *Christian v. State,* 184 Tenn. 163, 164, 197 S.W.2d 797; *Ferguson v. State,* 138 Tenn. 106, 109, 196 S.W. 140, and others that may be found by Shepardizing these cases.

■■ In criminal cases a conviction will not be reversed on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused. *Cooper v. State,* 123 Tenn. 37, 61, 138 S.W. 826, and others. We think the evidence introduced on the second trial of this man was clear and competent. Certainly it does not preponderate against the verdict herein.

■ The fact that this man was not tried at this second trial for more than ten years after this crime was committed is no violation of his constitutional right for a speedy public trial. He was tried shortly after committing this crime the first time, but no appeal was made. He was sentenced to the penitentiary where he stayed until released by order of the Federal Court and the judgment in this first trial held void. The cause remained without disposition and the indictments remained pending after the judgment had been voided by the proceedings initiated by the plaintiff in error on his petition for habeas corpus. "Where the judgment on the first trial was a nullity the accused cannot plead former jeopardy in bar of the second trial." *State ex rel. Underwood v. Brown,* 193 Tenn. 113, 122, 244 S.W.2d 168, 172.

■ The interesting question in this lawsuit is whether or not the testimony as taken in 1954 of Mr. Holm, who was the husband of the woman who was killed and the man shot, could be read in this record after it had been transcribed some ten years thereafter. A son of Mr. Holm who is now a resident of Texas appeared as a

witness for the State and testified that his father was the man who was shot and the husband of his mother; that he was living at the time of this second trial in Ekskogen, Sweden. Thus it is, that the question appears, can testimony of a living witness, who lives out of the jurisdiction of the United States, which was taken in a former trial, and the witness there subject to and was examined and cross-examined pro and con, be now substituted for this living witness who is out of the jurisdiction of the United States? The Uniform Law to Secure Attendance of Witnesses, T.C.A. sec. 40-2419 et seq., is limited to apply to any state, territory of the United States or District of Columbia. The Criminal Court of Sullivan County, who tried Stubbs, had no effective or compulsory process in Ekskogen, Sweden. Thus it is, that this assignment is not prejudicial.

The plaintiff in error relies upon our case of *Hall v. State*, 65 Tenn. 522, to the effect that it was error to let a person detail what he heard a witness on a committing trial state when such witness was still living, because he was not in attendance at the trial and is a resident of another state. This case has never been modified, affirmed, or followed. Nevertheless, under the facts of that particular case we think that the court was clearly correct. In the instant case we have an entirely different factual situation. Here it is true we have a living witness, but he is outside the territories of the United States.

The question here under consideration has been annotated in 15 A.L.R., beginning at page 517, and the annotator says:

"The courts did not accept the principle that testimony of an absent witness could be reproduced as readily as they did the proposition that death was a

ground of permitting such reproduction. And as the rule has been accepted, various conditions have been made which have required time to overcome, and they are not entirely overcome even at the present time. It seems logical to hold that, if death permits the reproduction of the testimony of the witness, his absence beyond the jurisdiction of the court, so that his presence cannot be secured at the trial, would require the same result. The courts have quite generally adopted such ruling.''

■ We hold that no unfair advantage has been taken of this man by allowing the reading of the testimony of the previous trial in the present trial under the facts and circumstances herein.

Lastly, it is contended the trial judge erred in overruling the motion of Stubbs to modify his sentence of twenty years confinement so as to allow credit for the entire pre-trial imprisonment from June 11, 1954, to date. Our statute covering such a situation is found in T.C.A. sec. 40-3102, and we have generally, it appears, without exception upheld the provisions of this Act so as to allow confinement in prison before a conviction to be credited on the prison sentence. This original Code Section was amended by Chapter 32 of the Public Acts of 1963, as follows:

"Provided, however, that in all cases where the defendant has served time in the jail, workhouse, or penitentiary either prior to or subsequent to any conviction arising out of the original offense for which he was tried, he shall receive credit on his sentence for such time spent in the jail, workhouse, and/or penitentiary.''

It would thus seem to us that the time this man spent in jail from 1954 up until the present time must be credited on the present sentence. The quoted portion of the statute provides that "he shall receive credit". The language leaves no room for discretion, and when the word "shall" is used in constitutions or statutes it is ordinarily construed as being mandatory and not discretionary. *Louisville & N. R. Co. v. Hammer*, 191 Tenn. 700, 236 S.W.2d 971, 973. This being true, we hold that the time spent in jail or the penitentiary prior to the conviction herein must be credited on the sentence received in this trial. Strength is added to this position by Chapter 145, Public Acts of 1965. However, this Act was not effective on the date the trial judge sentenced the man herein.

The judgment below will be affirmed subject to the modification last above made.

## On Petition to Rehear

Counsel for Stubbs have filed herein a very courteous and dignified petition to rehear wherein one of the questions raised on the original appeal is again presented in a different light. This presentation states that the admission of a portion of the transcript taken in the first trial, ten years ago, compounds "the original violation of the constitutional rights of this defendant" due to the lack of proper cross-examination at the first trial.

It is argued that in view of the fact that Stubbs' conviction was set aside and a new trial granted because of the speedy trial of Stubbs in the first instance counsel were not given a chance to investigate the background of the prosecutor, Axel Holm, and that the using of a portion of the transcript of the testimony of Holm in the

first trial compounded the error committed in the first trial, since counsel did not have an opportunity to cross-examine Holm and sufficiently investigate the matter.

We do not agree because when this present case is looked to, it is seen that Stubbs at the present time, ten years yater, admitted he forced Axel Holm and his wife at pistol point to get in the back seat of their automobile. He then drove it six miles west of Bristol on Highway 11-W. There is no showing that Holm had a pistol, and there is no reason to suppose that Holm would shoot and kill his wife and shoot himself twice. Neither may it be overlooked on the second trial the unerring identification by Axel Holm of Stubbs as his assailant, which identification was made in the presence of three Highway Patrolmen and a former police investigator of the City of Bristol and the attending physicians, who all except one appeared as witnesses for the State in the second trial and testified to these facts.

It is difficult for us to see how an investigation into the background of Holm and his wife who were residents of Texas and naturalized citizens of Swedish descent and who happened to be traveling on the highways of this State when this crime was committed could have helped the present appointed counsel or the counsel at the first trial concerning any matters affecting the credibility of Holm. There is more than ample evidence, which was believed by the jury to support the verdict and no further investigation of the background of Holm could have aided Stubbs in any way.

Thus, after fully considering this petition to rehear, it must be denied.