Reginald SHYE, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Sept. 25, 1973.

Certiorari Denied by Supreme Court Jan. 7, 1974.

Monte D. Curry, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., Bart Durham, Asst. Atty. Gen., Michael D. Noel, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

OLIVER, Judge.

Represented in his trial and here by the Public Defender, Shye was convicted of armed robbery in the Criminal Court of Davidson County and was sentenced to imprisonment in the penitentiary for 15 years. He has now brought his case to this Court by an appeal in the nature of a writ of error.

Although the defendant does not here question the sufficiency of the evidence, we summarize it briefly in the interest of clarity.

About 11:30 p.m. Tuesday, January 11, 1972 a man, identified as the defendant by three eye witnesses, entered the Mahalia Jackson Chicken Shop in Nashville, pointed a gun at the cashier, ordered her to put the money from the cash register into a paper sack and then fled. The store operator and another man pursued the robber but were unable to catch him.

Testifying in his own behalf, the defendant denied robbing the place and interposed an alibi. He testified that the night of January 11 he went to the theatre where his girl friend worked and that he left there about 11:30 and went to her home. She testified that she worked every night except Wednesdays; that every night the defendant with whom she lived, escorted her home; that they generally left the theatre around 10:00 or 10:30 and arrived at her house 10 to 15 minutes later; and that as she recalled they went directly home the night in question and remained there. Another theatre employee testified that from November 1971 through January 1972 the

defendant came to the theatre and stayed until closing time; and that he could not recall any night the defendant was not there except on his girl friend's day off.

The first Assignment of Error is that the court erroneously failed to grant the defendant's motion to dismiss, by which it appears he sought to attack the indictment. The motion does not begin to meet the requirements of a plea in abatement. At most, it can only be regarded as a motion to quash the indictment.

■ To begin with, the indictment is in no way defective upon its face. It is fundamental that a motion to quash an indictment will not lie unless it is invalid upon its face. Shadden v. State, Tenn.Cr.App., 488 S.W.2d 54 and authorities therein cited.

■ But beyond that, notwithstanding it appears in the Bill of Exceptions that the court overruled this motion, no order reflecting that action is shown to have been made and entered of record. When the Minutes of the trial court contain no entry showing any action upon a plea in abatement or a motion to quash an indictment, the established law of this State is that the appellate court cannot review the question raised by such a plea in abatement or motion to quash and is not permitted to look to recitals in the Bill of Exceptions to supply this defect. Jones v. State, 197 Tenn. 667, 277 S.W.2d 371; Gray v. State, 194 Tenn. 234, 241–242, 250 S.W.2d 86.

The second Assignment is that the trial court erred in failing to grant the defendant's request for the following special charge:

"The Supreme Court of the United States has ruled that the death penalty is cruel and unusual punishment in contravention of the Constitution of the United States (Furman vs. Ga.). You cannot then find the defendant guilty of armed robbery as the punishment for this crime has been abolished. However, the stat-ute covering armed robbery is severable per the laws of this State and you may find the defendant guilty of the lesser included offense of robbery and fix his sentence at not more than fifteen years nor less than five years if the facts so indicate."

■ An unnegotiable barrier stands in the defendant's way in making this insistence. No such special request is included in the Bill of Exceptions or authenticated by the trial judge as a part thereof. Therefore, this request is not properly before this Court and cannot by considered. Wheeler v. State, 220 Tenn. 155, 415 S.W. 2d 121.

■ But aside from that, there is no substance whatever in either the first or second Assignment of Error, for both are predicated upon the proposition that Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, holding capital punishment unconstitutional, abolished the capital offense of armed robbery in this State (T.C.A. § 39–3901). This is a misconception. See Bowen v. State, Tenn., 488 S. W.2d 373, the rationale of which is unmistakably applicable to all felonies previously punishable by death in this State. The offense remains; only the death penalty was outlawed by *Furman.*

By his third Assignment the defendant complains that the trial court overruled his motion for a mistrial made when E. W. Mayo, operator of the Mahalia Jackson Chicken Shop, identified him by name. This contention is based on the following testimony:

"Q. As a result of what he [an employee] said to you, what did you do?

A. I stopped momentarily, opened the window between the counter and the kitchen and I looked out and . . . .

Q. When you looked out there, what did you see?

A.  I saw Mr. Shye.

\*    \*    \*    \*    \*    \*

"THE COURT: Well, you opened the window and looked out over the counter . . . .

A.  I did so.

THE COURT: And saw what?

A.  I opened the window between the back of the . . . at the back of the serving portion there in the kitchen, there is an opening there, it's just a regular opening, but it's not . . . but it's a window, it's no closing window at all. So I looked out there and I saw Mr. Shye so . . . .

\*    \*    \*    \*    \*    \*

"THE COURT: Well, I believe . . . did you know Mr. Shye?

A.  No, sir.

THE COURT: Well, then, you don't necessarily know that you saw Mr. Shye, do you?

A.  Well, the gentleman that I'm looking at there is the man that I saw."

Defense counsel's objection to this testimony was upon the ground that at the time of the robbery Mr. Mayo did not know the defendant. After Mayo testified that he did not know the defendant's name at the time of the robbery, the jury was excused and he further testified apart from the jury that within a few days after the robbery he identified the defendant in some police photographs, and that later he saw the defendant's picture in the paper and learned his name.

■  After the court overruled the defendant's motion, the jury was instructed to disregard Mayo's identification by name and were told they were to decide the issue of identification. There is a presumption that the jury does not disregard the court's instructions not to consider evidence. O'Brien v. State, 205 Tenn. 405, 326 S.W.2d 759.

■  Aside from that, however, it will be noted that Mr. Mayo testified: "Well, the gentleman that I'm looking at there is the man that I saw." He thus identified the defendant in court. Moreover, in the context of the above-quoted testimony, we fail to see any conceivable prejudice to the defendant by the mere fact that Mr. Mayo mentioned his name. After all, that was his name and he was the defendant sitting in the courtroom.

Finally, equally baseless is the defendant's contention that the in-court identifications were tainted by improper prior photographic identifications. He argues that the other persons shown in the photographs did not resemble him, that the witnesses did not remember anything about the robber except that he was wearing a green tam, and that he was not represented by counsel when the witnesses identified him from photographs and was not present himself.

The cashier of the Mahalia Jackson Chicken Shop, Cora Crowder, testified that she observed the robber for about four minutes; that she approached him to wait on him, thinking he was a customer, when he came in; that he was a light-complexioned Negro man, wearing sideburns, a green tam and casual clothing; that the next night she was shown a total of six pictures of three different persons; that she identified the defendant immediately, that no suggestions were made for her to identify him, and that none of the persons in the other photographs resembled him.

Mr. Mayo testified that he observed the robber for about a minute; that he had described him as fair skinned, with a clean solid face, wearing a little mustache and a tam; that he viewed three to five line-ups but could not identify anyone in them; and that he identified the defendant in the pictures shown to him.

Lorenzo Hayden, a policeman assigned to investigate the case, testified that the robber was described as a Negro man 25 to 30 years old, six feet tall, weighing about

260 pounds, light complexioned and wearing a dark leather jacket; that he showed Mayo and Crowder photographs of (1) James Cox, six feet and one inch tall, medium complexioned, and weighing 185 pounds; (2) James Floyd, five feet and seven inches tall, medium brown complexioned, and weighing 140 pounds; (3) James Stevenson, medium brown complexioned, six feet and two inches tall, and weighing 165 pounds; (4) Carzell Payne, medium brown complexioned, six feet tall and weighing 210 pounds; and (5) the defendant, light complexioned, six feet and four inches tall, and weighing 250 pounds; that only the upper portions of these individuals were shown in the pictures, and that no improper suggestions were made when these photographs were shown.

With reference to identification by observation of photographs, the court said in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247:

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

■ Although the defendant appeared lighter skinned and heavier than other persons shown in the police photographs, the evidence clearly shows that no improper suggestions were made to the persons who viewed them. Crowder, who had opportunity to observe the robber face to face for about four minutes, immediately identified the defendant from his photograph. Mayo testified that the memory of the robber's face stuck in his mind because it was very fair and full and clean. Both of those witnesses looked at the photographs shortly after the robbery. Upon this record, we do not believe there was a "substantial likelihood of irreparable misidentification."

The United States Supreme Court has rejected the insistence, advanced by the defendant in this case, that an accused is entitled to have counsel present when witnesses view photographs, including his own, presented to them by members of law enforcement agencies. United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed. 2d 619 (1973). The majority of the federal courts have held that an accused is not entitled to have counsel present during photographic identification. United States v. Maxwell (10th Cir. 1972), 456 F.2d 1053; Tafoya v. Eyman (9th Cir. 1972), 455 F.2d 1265; United States v. Serio (6th Cir. 1971), 440 F.2d 827; United States v. Ballard (5th Cir. 1970), 423 F.2d 127; United States v. Bennett (2nd Cir. 1969), 409 F.2d 888; Contra: United States v. Zeiler (3rd Cir. 1970), 427 F.2d 1305.

In United States v. Bennett, supra, the Court said:

"The Court held in *Simmons*, 390 U.S. at 384, 88 S.Ct. 967, at 971, 'that each case must be considered on its own facts, and that convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' The record is inadequate for us to make such a finding here.

\*     \*     \*     \*     \*     \*

" . . . Many other aspects of the prosecution's interviews with a victim or a witness to a crime afford just as much opportunity for undue suggestion as the display of photographs; so, too, do the defense's interviews, notably with alibi witnesses. Although in *Simmons* the Court noted that the right to counsel was not involved, since the photographs were shown to the witnesses before any arrests had been made, Mr. Justice Harlan's opinion contains language bearing on this problem, 390 U.S. at 384, 88 S.Ct. 967, at 971:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirements.

"And in *Wade* itself, the Court listed as one of the ways the prosecution might attempt to show that a witness' identification of defendant at trial was not the fruit of a lineup held in the absence of counsel a showing of 'the identification by picture of the defendant prior to the lineup,' 388 U.S. at 241, 87 S.Ct. 1926, at 1940, which clearly implies that such identifications are permissible even when defendant's counsel is not present."

In United States v. Ash, supra, the Court said:

"We are not persuaded that the risks inherent in the use of photographic displays are so pernicious that an extraordinary system of safeguards is required. "We hold, then, that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender."

■ Identification of the defendant as the person who committed the crime for which he is on trial is a question of fact for the determination of the jury, upon consideration of all the competent proof. Stubbs v. State, 216 Tenn. 567, 393 S.W.2d 150; Biggers v. State, 219 Tenn. 553, 411

S.W.2d 696, affirmed 390 U.S. 404, 88 S.
Ct. 979, reh. den. 390 U.S. 1037, 88 S.Ct.
1401, 20 L.Ed.2d 298; Neil v. Biggers, 409
U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

Affirmed.

MITCHELL and O'BRIEN, JJ., concur.