# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
June 19, 2002 Session

## STATE OF TENNESSEE v. DEMETRIUS K. HOLMES

### Appeal from the Criminal Court for Knox County
### No. 68714    Richard. R. Baumgartner, Judge

---

### No. E2001-00660-CCA-R3-CD
### July 23, 2002

---

The defendant, Demetrius Kendale Holmes, was convicted of felony murder and especially aggravated robbery. The trial court imposed consecutive sentences of life and 24 years, respectively. In this appeal of right, the defendant asserts that the evidence is insufficient to support his convictions. The judgments of the trial court are affirmed.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Kenneth F. Irvine, Knoxville, Tennessee (on appeal), and Susan E. Shipley, Knoxville, Tennessee (at trial), for the appellant, Demetrius K. Holmes.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and G. Scott Green, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

On May 19, 1999, the victim, Clarence Arnold was shot and killed in apartment 240 of the Walter P. Taylor Homes housing project in Knoxville. The apartment was shared by Stacy Owens and Aretha Cross, the latter of whom was working as a prostitute at that location. According to Ms. Cross, whose services the victim utilized on an almost daily basis, she first encountered the victim on the morning of the shooting as he was purchasing drugs from the defendant. At that time, Ms. Cross had been addicted to crack cocaine for some fifteen years and often bought crack from the defendant, whom she had known for several years. Later, while Ms. Cross observed the victim purchase drugs from another individual, the defendant arrived unexpectedly and became angry. According to Ms. Cross, the defendant threatened them saying, "Don't think I'm playing with ya'll; I'm going to get a gun."

Eventually, the victim joined Ms. Cross at apartment 240 and Ms. Owens left to buy more drugs for him. Later, after they had been inside for some time, Ms. Cross opened the door of the apartment to see if Ms. Owens had returned. When she opened the door, the defendant, who was standing in the doorway, asked if they "need[ed] any crack." Ms. Cross responded in the negative, explaining that Ms. Owens had all of their money. According to Ms. Cross, the victim then said, "[N]o, if he got something, let me get it from him." The defendant pointed a gun at the victim and demanded money. At that point, Ms. Cross panicked, saying, "Clarence, please give him the money." As the victim handed the defendant his money, Ms. Cross ran out of the apartment, hid in a corner, and then heard a single gunshot. As the defendant left the apartment, he pointed his weapon at Ms. Cross and warned, "You the only one know . . . what I done, and I will kill you."

Ms. Cross ran into the apartment to check on the victim and found him on the bed, body "twisted around," and bleeding from his chest. She screamed for help and a woman whom she knew only as "Nugget" came to assist her. While "Nugget" checked the victim for signs of life, Ms. Cross called 911. During her conversation with the 911 operator, Ms. Cross claimed that she did not know who shot the victim.

Ms. Cross initially told officers that she did not know who killed the victim. Later, after explaining that she was scared of the defendant, Ms. Cross gave a statement to police naming the defendant as the perpetrator. She also identified the defendant from a photographic lineup. At trial, she conceded that she had given differing accounts to police about the events surrounding the shooting, but she consistently maintained that the defendant was the assailant. Ms. Cross also admitted to having given false information to police on a previous occasion, which had resulted in a guilty plea to the crime of criminal impersonation. Finally, she acknowledged that she was under the influence of crack cocaine on the day of the shooting.

Officer Joe Cox of the Knoxville Police Department testified that when he arrived at the scene shortly after 5:00 p.m., emergency medical personnel were attempting to revive the victim. Officer Cox observed the victim's body on the bedroom floor, a large amount of blood on the bed, and several drops of blood just outside the bedroom on the living room floor. Officer Cox found a spent round under the couch in the living room. On cross-examination, Officer Cox conceded that no attempt was made to dust the apartment for fingerprints. It was his opinion that dusting for prints would have been futile.

Detective Sam Brown, also of the Knoxville Police Department, was called to assist in the investigation of the shooting. When he arrived at the scene, he observed Ms. Cross, who appeared nervous and somewhat intoxicated, standing outside of the apartment. He did not speak with Ms. Cross at that point but instead traveled to U.T. Hospital to attempt to speak with the victim. At the hospital, Detective Brown learned that the victim had died. He then went to the Safety Building, where Ms. Cross and other potential witnesses were waiting to be interviewed regarding the shooting. According to Detective Brown, Ms. Cross first denied any knowledge, but later gave a tape recorded statement implicating the defendant in the robbery and murder of the victim. Ms.

Cross also told Detective Brown that the defendant had threatened to kill her if she told anyone that he was the shooter.

Medical testimony established that the victim died from a single gunshot wound to the chest. Dr. Sandra Elkins, who performed an autopsy of the victim, testified that the bullet fractured the ribs and sternum before lacerating both the left and right lungs and the anterior front portion of the heart. According to Dr. Elkins, death would have occurred within minutes.

At trial, Dalandra Porter, a friend of the defendant, testified that the defendant was at her residence in the Green Hills apartment complex at the time of the shooting. Ms. Porter claimed that the defendant arrived between 3:00 and 3:30 p.m. and left at approximately 5:30 p.m. Sandy Porter, Dalandra Porter's mother, provided essentially the same account of the defendant's whereabouts at the time of the shooting. Neither had provided a statement to police before trial.

The defendant contends that the evidence is insufficient to support his convictions for first degree murder and especially aggravated robbery. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain the verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Felony murder is the "killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy[.]" Tenn. Code Ann. § 39-13-202(a)(2) (1997 & Supp. 1999). Especially aggravated robbery is a robbery, defined as "the intentional or knowing theft of property from the person of another by violence or putting in fear," accomplished with a deadly weapon and where the victim suffers serious bodily injury. Tenn. Code Ann. §§ 39-13-401, -403 (1997).

The evidence adduced at trial established that the defendant had demanded money from the victim at gunpoint before shooting him once in the chest. The defendant asserts that because Ms. Cross gave differing accounts of the shooting, made her living as a prostitute, and was under the influence of crack cocaine, no rational trier of fact would have believed her testimony. He argues, therefore, that the evidence is insufficient to support his convictions. As indicated, this court may

not resolve questions of witness credibility on appeal. That function is solely within the province of the trier of fact. <u>See, e.g.</u>, <u>State v. Carey</u>, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995). In our view, the evidence is sufficient to support the defendant's convictions for felony murder and especially aggravated robbery.

In a related issue, the defendant asserts that the trial court erred by admitting into evidence the photographic lineup from which Ms. Cross identified the defendant. He claims that admission of the lineup was error because (1) photographic lineups should be used only when the witness is not familiar with the suspect and (2) Ms. Cross had already testified that she told police that the perpetrator wore a mask. This issue is waived, however, because the defendant has failed to cite any authority for his position. <u>See</u> Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R.10(b); <u>see also</u> <u>State v. Chance</u>, 778 S.W.2d 457, 462 (Tenn. Crim. App. 1989); <u>State v. Killebrew</u>, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988). Further, the research performed by this court has not been of any assistance to the defense. The identification of a defendant as the person who has committed the crime for which he is on trial is a question of fact to be determined by the jury. <u>See</u> <u>Stubbs v. State</u>, 216 Tenn. 567, 572, 393 S.W.2d 150, 153 (1965); <u>State v. Crawford</u>, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982). The only limitation is that "'convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" <u>Shye v. State</u>, 506 S.W.2d 169, 173 (Tenn. Crim. App. 1973) (quoting <u>Simmons v. United States</u>, 390 U.S. 377, 384 (1968)); <u>see also</u> <u>Cross v. State</u>, 540 S.W.2d 289, 290 (Tenn. Crim. App. 1976). No such allegations have been made by the defendant in this case.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-4-