IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 3, 2004

## STATE OF TENNESSEE v. CHRISTOPHER KIRKENDALL

**Appeal from the Criminal Court for Shelby County**
**Nos. 02-02068, 69     Chris Craft, Judge**

**No. W2004-00784-CCA-R3-CD  - Filed September 16, 2004**

The defendant, Christopher Kirkendall, indicted for one count of attempted first degree murder and two counts of aggravated robbery, was convicted of facilitation of attempted second degree murder and two counts of facilitation of aggravated robbery, all Class C felonies.  The trial court imposed a sentence of six years for facilitation of attempted second degree murder and, after merging the robbery convictions, imposed a five-year sentence for one count of facilitation of aggravated robbery. The sentences were ordered to be served consecutively to each other and consecutively to a previously imposed twelve-year sentence for an unrelated offense.  In this appeal of right, the defendant challenges the sufficiency of the identity evidence and argues that the sentences should be concurrently served.  Since the filing of the briefs, the defendant has also asked to consider the impact of the ruling in Blakely v. Washington, 542 U.S. ____ , 124 S. Ct. 2531 (2004), as to the lengths of the sentences.  The judgments are affirmed as modified.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed as Modified**

GARY R. WADE, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. THOMAS T. WOODALL, J., filed a separate opinion, concurring in part and dissenting in part.

W. Mark Ward (on appeal) and Trent Hall (at trial), Assistant Public Defenders, for the appellant, Christopher Kirkendall.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; and Reginald Henderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 27, 2001, David Dickey, a Pizza Hut employee, was directed to 1425 Frayser Boulevard in Memphis to deliver a pizza.  When he arrived in his 1999 Ford Contour automobile, the house was unoccupied but three men met him in the driveway.  One of the men was armed with a pistol and ordered the victim to the ground.  As the armed assailant held a gun to the victim's

cheek, the two other men took his wallet, which contained over $300 in cash, a delivery bag containing the pizzas, and his other personal belongings. After emptying the pockets of the victim, the armed assailant, later identified as the defendant, shot the victim in the back of the head. The three men left in the victim's vehicle and the victim, who had not lost consciousness, sought help from a nearby resident who summoned the police. The victim was able to identify the defendant as the gunman from a photographic lineup. Later, at trial, the victim again identified the defendant as the armed assailant.

Officer Kent Workman, who was dispatched to the scene, found that the house at 1425 Frayser Boulevard was vacant. An empty pizza bag was on the bloodstained driveway. Because there was a yard light and a street light, the officer described the area as relatively well lit. Despite his injury, the victim was alert and was able to provide the officer with the details of the incident, including a description of his assailants. The victim also provided a description of his vehicle and license tag number.

Two days later, Patrol Officer Eugene Cicalla observed the victim's car at the 76 Snack Shop on Frayser Boulevard. A juvenile was inside the vehicle and the defendant and another individual were nearby. All three men were arrested.

The defendant did not testify. His sister, Angela Kirkendall, with whom the defendant was living at the time of the trial, testified that the defendant was with her at their residence at the time of the crimes.

Laquita Nisby Kirkendall, the defendant's sister-in-law, testified that "right before dark" on the day of the robbery, she had asked for a pizza for dinner. She claimed that her boyfriend at the time, Joseph Jones, and two other men, identified as Net and Arthur, ordered pizza and then left "on foot," returning about 45 minutes later. She contended that the men were in possession of pizza, money, a wallet, a gun, and a cell phone. Ms. Kirkendall testified that after she later saw an account of the robbery on the news, she contacted Crime Stoppers and identified Jones as a likely participant in the crimes.

In this appeal, the defendant first argues that the identity evidence was insufficient. He also contends that he should not have been classified as a dangerous offender for consecutive sentencing purposes and insists that the length of the terms was excessive.

I

The argument of the defendant is that his conviction is based almost entirely upon the eyewitness identification by the victim, who had no prior acquaintance with his assailant. The defendant points out that there was a possibility of misidentification because the crime took place at night and because the victim was lying face down on the ground, fearful for his life. The defendant submits that a rational trier of fact could not have found the defendant guilty beyond a reasonable doubt.

-2-

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Evidence offered to prove identity can be either direct or circumstantial. State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975). In State v. Beal, this court held that the reliability of an in-court identification depended upon the totality of the circumstances, "including the opportunity of the witness to view the offender at the time of the crime, the witness's degree of attention, the accuracy of the prior description of the offender, the level of certainty of the witness at the confrontation, and the length of time between the crime and the confrontation." 614 S.W.2d 77, 82 (Tenn. Crim. App. 1981) (citing Neil v. Biggers, 409 U.S. 189, 199 (1972); Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Rippy v. State, 550 S.W.2d 636, 639-40 (Tenn. 1977)). So long as it is not impermissibly or unreasonably suggestive, a photographic display is a legally viable alternative means of identification. Shye v. State, 506 S.W.2d 169, 173-75 (Tenn. Crim. App. 1973).

In this instance, the victim made an unequivocal identification of the defendant first from a photographic array and later during the course of the trial. The identification of a defendant as the person who has committed the crime is a question of fact for the jury. Stubbs v. State, 216 Tenn. 567, 393 S.W.2d 150 (1965); White v. State, 533 S.W.2d 735 (Tenn. Crim. App. 1975). The testimony of a victim identifying the defendant as the perpetrator is sufficient to support a conviction. State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993). The jury, which saw and heard the witnesses firsthand, chose to accredit the testimony of the victim, as was their prerogative. See State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). In our view, the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that the defendant committed the crimes.

II

Next, the defendant argues that the trial court erred by enhancing the lengths of the sentences to five and six years and by ordering the terms to be served consecutively. As a Range I offender convicted of Class C felonies, the defendant qualified for a sentence of between three and six years on each conviction. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the

determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994).  "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls."  State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).  The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class C felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors.  Tenn. Code Ann. § 40-35-210(c).  If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range.  Tenn. Code Ann. § 40-35-210(d).  A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence.  Tenn. Code Ann. § 40-35- 210(e).  The sentence must then be reduced within the range by any weight assigned to the mitigating factors present.  Id.  If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result.  State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

At the conclusion of the sentencing hearing, the trial court found three enhancement factors as to the facilitation of aggravated robbery and four enhancement factors as to the facilitation of attempted second degree murder.  As to each conviction, the trial court, by a preponderance-of-the-evidence standard, concluded that the following factors applied:

> (2)      That the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> (3)      that the defendant was the leader in the commission of an offense involving two or more criminal actors;
> (21)      that the defendant as a juvenile had committed two separate delinquent acts at ages 13 and 14 that would constitute felonies if committed by an adult.

See Tenn. Code Ann. § 40-35-114(2), (3), (21) (2003).  As to facilitation of attempt to commit murder in the second degree, the trial court also applied enhancement factor (10), that the defendant possessed or employed a firearm during the commission of the offense.  See Tenn. Code Ann. § 40-35-114(10) (2003).  There were no findings as to any mitigating factors.

-4-

Under the terms of the 1989 Act, the term of each sentence would be entirely appropriate. Three enhancement factors applied to the five-year sentence and four applied to the six-year sentence.

The United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. ____, 124 S. Ct. 2531 (2004), however, calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. Id. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537 (emphasis in original). Finally, the Court concluded that "every defendant has a right to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." Id. at 2543 (emphasis in original).

Under the rule established in Blakely, the defendant's prior convictions may be used to enhance the sentences. With regard to that factor, the trial court in this instance gave "fairly good weight" to a prior aggravated robbery offense, a Class B felony, because "there was a deadly weapon used." The state submits that the application of enhancement factor (21), that the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, is appropriate because it is based upon prior convictions. Under our law, however, juvenile adjudications differ fundamentally from criminal convictions. The purpose of juvenile justice laws is to "remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior." Tenn. Code Ann. § 37-1-101. Moreover, our statutes provide that "adjudication in a proceeding under this part is not a conviction of a crime." Tenn. Code Ann. § 37-1-133(a). In our view, juvenile adjudications do not qualify as prior convictions under the rule established in Apprendi and Blakely.

The remaining factors, enhancement factors (3) and (10), are not based on prior convictions and were not admitted by the defendant. In consequence, the holding in Blakely would preclude their application. In our view, by application of the ruling in Blakely, the term of each sentence should be modified to four years, one year above the minimum.

The defendant also asserts that the trial court erred by ordering consecutive sentencing. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

---

[1] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, considered the most subjective of the classifications and the most difficult to apply, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." 905 S.W.2d at 938.

The trial court imposed consecutive sentencing, finding that the defendant was a dangerous offender. After determining that "the circumstances surrounding the commission of this offense are aggravated" and "completely unnecessary," the trial court concluded that "this man fired a bullet into this man's head just because he wanted to, for no other necessary reason." Had the victim not turned his head as the gun was fired, he might not have survived. The trial court observed that the defendant had been expelled from school for fighting, that he had an extensive history of delinquent acts as a juvenile, and that he had resorted "to criminal activity in furtherance of an antisocial lifestyle." The court described the defendant as "rambling wild" and without a care "about anything or anybody," having been on probation several times unsuccessfully. Observing that the defendant had attempted and failed at several rehabilitative programs, the trial court ruled that the aggregate length of the sentence was reasonable in relation to the seriousness of the offenses. Because the trial court made findings of fact, as required, and properly classified the defendant as a dangerous offender, it is our view that consecutive sentencing was appropriate.

Accordingly, each of the sentences is modified to four years. The terms shall be served consecutively, however, for an effective sentence of eight years. Otherwise, the judgments are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE