# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 16, 2003 Session

## STATE OF TENNESSEE v. RICHARD DANIEL FILAURO

**Appeal from the Criminal Court for Davidson County**
**No. 99-D-2711     Steve Dozier, Judge**

---

**No. M2002-02186-CCA-R3-CD - Filed April 16, 2004**

---

The defendant, Richard Daniel Filauro, appeals as of right the Davidson County Criminal Court's denial of his motion to withdraw his guilty pleas to two counts of rape of a child, Class A felonies. At the guilty plea hearing, the trial court imposed two concurrent twenty-five-year sentences, as provided in the plea agreement. In addition, the agreement stipulated that the defendant would not receive pretrial jail credit for the eighteen months he spent in jail before agreeing to plead guilty. The defendant contends that he should be allowed to withdraw his guilty pleas (1) because the trial court did not have jurisdiction to accept his pleas and (2) because his guilty pleas are manifestly unjust. We conclude that the defendant's sentence is illegal, that his guilty pleas are manifestly unjust, and that he should be allowed to withdraw his pleas.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

David L. Raybin, Nashville, Tennessee, for the appellant, Richard Daniel Filauro.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian K. Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's guilty pleas for his conduct toward his eight-year-old granddaughter. At the guilty plea hearing on May 10, 2002, the defendant agreed that he understood what he was doing and that he was pleading guilty of his own free will. He agreed that he was not under the influence of drugs or alcohol and that he had no mental disabilities. He said he was satisfied with his attorney's representation. He agreed that he was aware that the plea agreement provided that he would not receive pretrial jail credits and that his sentence would be served at one

hundred percent.  At the plea hearing, the state provided the following factual account of the defendant's offenses:  In April of 1999, the defendant had sexual contact with the victim on several occasions.  He would place his fingers inside her genital region and would rub that area.  The defendant also performed oral sex on the victim in her grandmother's bedroom on multiple occasions.  In an interview with the police, the defendant admitted touching the victim's genital area but said that he only touched her when giving her a bath or when checking her for injuries.  The defendant then fled to Canada but was later caught and extradited back to Tennessee.  The trial court then accepted the defendant's guilty pleas and imposed the agreed upon sentences, stating that the court had concluded that the pleas were knowingly and voluntarily entered.

On May 31, 2002, the defendant, through new counsel, filed a motion to withdraw his guilty pleas, contending that his pleas were both illegal and manifestly unjust.  At the hearing on the motion, one of the defendant's trial attorneys, Jennifer Thompson, testified that she had become co-counsel with the defendant's attorney, Aaron Wyckoff, because she had trial experience in child sex abuse cases.  She said the prosecutor told her he believed the defendant was guilty and was not very interested in a plea agreement.  She said the prosecutor believed that the defendant was a pedophile because of pictures of flat-chested women and naked cartoon children that the defendant's wife had given to the prosecutor.  She agreed, though, that the pictures would likely be inadmissible in a trial.

Ms. Thompson testified that the prosecutor eventually offered a twenty-five-year sentence if the defendant pled guilty and that this was the first offer that she believed the defendant might accept.  She said she initially told the defendant that he would serve the twenty-five-year sentence at eighty percent.  She said she returned the next day with Mr. Wyckoff and told the defendant that she was incorrect; he would have to serve his sentence at eighty-five percent.  She said that later, she told the defendant that she had again been incorrect and that he would have to serve his sentence at one hundred percent.  She said, however, that she told the defendant that she had had other clients convicted of similar crimes who did not have to serve their entire sentences.  Ms. Thompson testified that she explained to the defendant that under the plea agreement, he would not receive any pretrial jail credit.  She said that the defendant was concerned that he would not get any credit for the eighteen months he had spent in jail.  She said that she talked to the prosecutor about jail credits but that he was unwilling to change the terms of the offer.  She said that she believed the defendant was automatically entitled to pretrial jail credits but that she did not tell the prosecutor because she was afraid he would revoke the offer.  She said she believed the defendant would have a cause of action after he had served twenty-five years.

Ms. Thompson testified that Mr. Wyckoff was uncomfortable with the plea because the defendant would likely die before the end of his sentence and, therefore, nothing would be gained by accepting the prosecutor's offer.  She said that in her discussions with the defendant, however, he ultimately decided to accept the offer because he wanted to have some hope that he would get out of prison before he died.  She said that the victim's testimony was the only evidence against the defendant and that the victim's taped statement against the defendant seemed very contrived.  She acknowledged that the victim was not sure if the defendant had penetrated her.  She said she was not aware that the defendant was taking antidepressant medication at the time of the guilty plea.  She

said that about one week after the defendant pled guilty, Mr. Wyckoff told her that the defendant had called and was not happy with the plea agreement.

On cross-examination, Ms. Thompson testified that the prosecutor told her that he did not settle child abuse cases unless the defendant was willing to acknowledge responsibility for his offenses. She said that when she was negotiating for a plea agreement, she was aware that the defendant might get indicted for his possession of the pictures that his wife gave to the prosecutor. She agreed that the defendant had admitted having non-sexual contact with the victim's genitalia. She said that if the defendant testified, the defendant's pictures of young women may have been admissible, depending on the defendant's testimony. She said the prosecutor told her that the best offer she would receive was a twenty-five-year sentence with no pretrial jail credits. She said the defendant had a hard time deciding whether to accept the offer.

Ms. Thompson acknowledged that the defendant told her that he wanted a plea agreement. She said the defendant did not seem to have any mental problems. She acknowledged that there was evidence of the defendant's penetration of the victim and that she was aware of the allegation that the defendant had performed oral sex on the victim. She acknowledged that the defendant's brother, through a lawyer, had offered the defendant's wife ten thousand dollars to drop the charges but said that she did not believe there was strong evidence that the defendant was involved. Upon questioning by the court, Ms. Thompson testified that she had informed the defendant of the possibility of consecutive sentences and that she told him that she believed he would receive consecutive sentences if he was convicted by a jury.

Mr. Wyckoff testified that when he first met the prosecutor in the defendant's case, the prosecutor offered a plea agreement of forty-three years and said he would not accept a best interest plea. He said that the defendant told him that he was innocent and that he did not believe the defendant was guilty of child rape. He said it was clear to him that they were going to have to go to trial. He said that Ms. Thompson became involved because the defendant had been told about her in jail and wanted her to try to negotiate a better plea agreement. He said Ms. Thompson told him that she had informed the defendant that his sentence would be served at eighty percent. He said that the day before the guilty plea hearing, Ms. Thompson told the defendant that she had been mistaken and that he would have to serve one hundred percent of his sentence. He said that he had never been involved in a case where the defendant did not receive pretrial jail credit and that the defendant was concerned about getting this credit. He said he was opposed to pleading guilty because a twenty-five-year sentence for the defendant was essentially a life sentence. He said that he was aware that the defendant was on antidepressant medication and that the defendant was a very timid person. He said he refused to sign the plea agreement form. He said that three days after the guilty plea, the defendant told him that he was unhappy with his plea and believed "a game" had been played on him by Ms. Thompson.

On cross-examination, Mr. Wyckoff testified that the defendant had a good relationship with both trial attorneys. He said that at the time of the plea hearing, the defendant seemed capable of making a rational and knowing decision about whether to accept the plea offer and that the defendant

ultimately made his own decision to plead guilty. He said that on the date of the plea, nothing indicated that the defendant was not mentally competent.

The defendant testified that he took antidepressant medication that allowed him to go to sleep but that the medication also caused him not to be able to concentrate. He said that while he was in jail awaiting trial, he heard many inmates charged with sex crimes discussing plea offers and wondered why he was not receiving any. He said he called Ms. Thompson and asked her to talk to the prosecutor about an offer. He said that later, she told him that the prosecutor had offered a twenty-five-year sentence, which he would have to serve at eighty percent. He said that later in the week, she told him that he would have to serve his sentences at eighty-five percent. He said that sometime before the guilty plea hearing, she told him that he would have to serve his sentence at one hundred percent but that the Department of Correction may not require him to serve his entire sentence. He said, however, that when he got to prison, he found out that he would have to serve one hundred percent of his sentence in prison. He said that although his trial attorney told him that he could get pretrial jail credit at some point in the future, he realized at prison that he would not get any credit. He said he did not believe his attorneys represented him properly because he never understood that he would be required to serve one hundred percent of his sentence. He said he did not tell the court he was on medication at his guilty plea hearing because the medication caused him not to think very well. He said that when he pled guilty, he thought he might be able to serve his sentence at eighty-five percent.

On cross-examination, the defendant testified that he was untruthful at the plea hearing when the court asked him whether he was guilty and when he said he was not on any medication. He said that while in jail, he realized that people who were convicted at trial received greater sentences than those who accepted plea offers from the state. He acknowledged that he asked his trial attorney to inquire about a plea agreement. He said that he was on medication when he called Mr. Wyckoff to tell him that he was not happy with his plea agreement.

The trial court denied the defendant's motion to withdraw, finding that a defendant could waive pretrial jail credit and that his effective sentence of 26.5 years was not illegal. The court also found that although the defendant had initially been misinformed by counsel, he was fully informed when he entered his guilty pleas. It noted that the defendant told the court at the guilty plea hearing that he had read the plea agreement and understood the rights he was waiving. It also found the defendant's claim that because he was on medication, he was unable to understand his sentence to be incredible.

## I. ILLEGAL SENTENCE

The defendant contends that the trial court did not have jurisdiction to allow him to waive his pretrial jail credit in his guilty plea because (1) pretrial jail credit is mandatory and cannot be waived and (2) his resulting 26.5-year sentence exceeds the maximum sentence allowed for a Range I offender convicted of a Class A felony. He asserts, therefore, that his guilty pleas are illegal. The state claims that the defendant's guilty pleas are not illegal.

A. Waiving Pretrial Jail Credit

The defendant asserts that under McConnell v. State, 12 S.W.3d 795 (Tenn. 2000), the court was without jurisdiction to accept his pleas because jail credits cannot be waived. The state claims that under State v. Turner, 919 S.W.2d 346 (Tenn. Crim. App. 1995), a defendant may waive pretrial jail credit when negotiating for a plea offer from the prosecution. Turner, in fact, states that "the right to credit for confinement prior to the present conviction was personal to the appellant, and he had the right, if he wanted to accept the [state's] offer, to waive his right to the credit." Id. at 359. The state conceded at oral arguments, however, that the language in Turner allowing a defendant to waive jail credits is dictum.

With regard to pretrial jail credit, T.C.A. § 40-23-101(c) states the following:

> The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail or juvenile court detention prior to waiver of juvenile court jurisdiction, or county jail or workhouse, pending arraignment and trial.

In McConnell, our supreme court stated that "'a judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal and is subject to being set aside at any time . . . .'" Id. at 798 (quoting State v. Mahler, 735 S.W.2d 226, 228 (Tenn. 1987)); see also McClaney v. Bell, 59 S.W.3d 90 (Tenn. 2001) (stating that the trial court was without jurisdiction to accept guilty pleas allowing the defendant to serve his sentences concurrently because T.C.A. § 40-20-111 requires consecutive sentences when a defendant commits a felony while on bail); State v. Keen, 31 S.W.3d 196 (Tenn. 2000) (stating that pursuant to T.C.A. § 40-35-117(b), the trial court is required to sentence the defendant based on the 1989 Sentencing Act, and the court is without jurisdiction to sentence the defendant otherwise); Stephenson v. Carlton, 28 S.W.3d 910 (Tenn. 2000) (stating that the trial court was without jurisdiction to accept a guilty plea allowing the defendant to serve a sentence of life without parole when the statute allowing this sentence was not in effect at the time of the offense); Mario Lambert v. Morgan, No. M2002-00172-CCA-RM-PC, Hickman County (Tenn. Crim. App. Mar. 22, 2002) (stating that the trial court was without jurisdiction to accept a guilty plea allowing the defendant to serve his sentence at thirty percent because T.C.A. § 40-35-501 requires that defendants convicted of second degree murder serve their sentences at one hundred percent).

Tennessee Code Annotated section 40-23-101(c) states that a trial court "shall . . . render the judgment of the court so as to allow the defendant credit." In Stubbs v. State, 393 S.W.2d 150, 154 (Tenn. 1965), our supreme court discussed jail credits, stating that "[t]he language leaves no room for discretion, and when the word 'shall' is used in constitutions or statutes it is ordinarily construed as being mandatory and not discretionary." We believe that the defendant's sentence, allowing him

to waive pretrial jail credits, is in "direct contravention" of T.C.A. § 40-23-101's "express statutory provision" that requires a court to award a defendant pretrial jail credit. See McConnell, 12 S.W.3d at 798. We conclude that we should not follow the dictum in Turner and, instead, believe that we are required to hold that the defendant's sentence is illegal.

### B. Sentence Exceeding Maximum in the Range

The defendant contends, again relying on McConnell, that his effective 26.5-year sentence exceeds the maximum for a Range I offender convicted of a Class A felony and, therefore, is illegal. The state argues that in Bland v. Dukes, 97 S.W.3d 133, 135-36 (Tenn. Crim. App.), app. denied (Tenn. 2002), this court explained that plea agreements such as the one at issue here are proper under McConnell. In Bland, this court noted that the McConnell court cited Hicks v. State, 945 S.W.2d 706 (Tenn. 1997), "with approval and affirmed that its decision did not alter 'the ability of the State and defendants to use offender classification and release eligibility as subjects of plea bargain negotiations.'" Id. at 135 (quoting McConnell, 12 S.W.3d at 798). In Hicks, the petitioner pled guilty to voluntary manslaughter, a Class C felony, and agreed to a hybrid sentence involving a Range II length of incarceration of ten years and a Range I release eligibility percentage of thirty percent. See T.C.A. § 40-35-112(a)(3), (b)(3). He later petitioned for post-conviction relief, contending that his agreed, ten-year sentence was in contravention of the 1989 Sentencing Act when coupled with his thirty percent release eligibility status. The court concluded that such hybrid sentences are permissible under the 1989 Act and held that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." Hicks, 945 S.W.2d at 709.

In McConnell, the petitioner pled guilty and agreed to a sentence under the 1982 Sentencing Act, although the 1989 Act had already taken effect. The petitioner pled guilty to second degree murder, a Class A felony, and six counts of robbery with a deadly weapon, a Class B felony. He agreed to a sentence of thirty-five years as a Range I offender under the 1982 Sentencing Act for the murder, to concurrent ten-year sentences for five of the robbery counts, and to a thirty-five-year sentence for the sixth robbery count to run consecutively to the murder sentence. The supreme court held that the trial court's jurisdiction to sentence the petitioner was limited by the 1989 Sentencing Act, which sets the perimeter within which the state and the accused can negotiate. McConnell, 12 S.W.3d at 798-99. It stated that the thirty-five-year sentences imposed pursuant to the 1982 Act exceeded the maximum twenty-five-year and twelve-year sentences for a Range I offender under the 1989 Act. Id. at 800.

In the present case, the judgments reflect that the defendant was sentenced as a Range I offender, not a Range II offender. Unlike the petitioner in Hicks, who negotiated to plead guilty and receive a sentence in a higher Range than he would have otherwise been eligible, the defendant in this case negotiated to plead guilty and to receive a Range I sentence that exceeded the maximum sentence a Range I offender could receive. See T.C.A. § 35-40-112(a)(1). The defendant never agreed to be sentenced as a Range II offender, and the judgment forms reflect that he was, in fact, sentenced as a Range I standard offender. In this respect, we believe that the defendant's effective 26.5-year sentence is in "direct contravention" of the "express statutory provision" in T.C.A. § 35-

40-112(a)(1) that states that a Range I offender convicted of a Class A felony is to receive a sentence of not less than fifteen nor more than twenty-five years. See McConnell, 12 S.W.3d at 798.

We also note that the judgment forms used in the defendant's case, unlike the judgment form used in Bland, separate range classifications and release percentages. The judgment form used in Bland reflected a guilty plea and a hybrid sentence with one range used for sentence length and another range used for release eligibility. Here, however, the judgment forms simply reflect that the defendant pled guilty and was sentenced as a Range I offender, irrespective of his release eligibility. Because the judgment reflect that the defendant is a Range I, standard offender convicted of a Class A felony, his 26.5-year sentence exceeds the maximum authorized by T.C.A. § 35-40-112(a)(1) and, therefore, is illegal.

## II. MANIFEST INJUSTICE

The defendant contends that his pleas are manifestly unjust because (1) he was misinformed that he would only have to serve eighty percent of his sentence, (2) he was on antidepressant medication at the time of his pleas, and (3) he was erroneously told that he would receive eighteen months of pretrial jail credit. The state asserts that the defendant wants to withdraw his pleas because he had a change of heart and that he entered his pleas voluntarily, understandingly, and knowingly.

Initially, we note that although the trial court addressed the merits of the defendant's manifest injustice claim, it first ruled that it did not have jurisdiction to allow the defendant to withdraw his guilty pleas once the judgments were entered. The defendant pled guilty on May 10, 2002, and filed a motion to withdraw his guilty pleas on May 31, 2002. We acknowledge that at the time of the court's ruling, this court had held that when the guilty plea, the waiver of the right to appeal, and the sentence are all entered on the same day, the judgment of conviction becomes final on that day, rendering the trial court without jurisdiction to rule upon any subsequent motion to withdraw. See State v. Hall, 983 S.W.2d 710, 711 (Tenn. Crim. App. 1998). However, our supreme court has since overruled Hall, holding that "a judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence." State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003). Thus, the trial court had jurisdiction to allow the defendant to withdraw his pleas.

Pursuant to Rule 32(f), Tenn. R. Crim. P., a defendant may seek to withdraw a guilty plea for any fair and just reason before the trial court imposes the sentence. Once the trial court imposes the sentence but before the judgment becomes final, it "may set aside the judgment of conviction and permit the defendant to withdraw the plea" in order to correct manifest injustice. Tenn. R. Crim. P. 32(f). To avoid manifest injustice, the trial court may allow the defendant to withdraw a guilty plea that was "not voluntarily, understandingly, or knowingly entered" or was entered because of mistake. Turner, 919 S.W.2d at 355. "Conversely, a trial court will not, as a general rule, permit the withdrawal of a plea of guilty to prevent 'manifest injustice' when the basis of the relief is predicated upon (a) an accused's 'change of heart,' (b) the entry of the plea to avoid harsher punishment, or (c)

an accused's dissatisfaction with the harsh punishment imposed by a trial court or a jury." Id. We are bound to uphold the trial court's determinations regarding the withdrawal of a guilty plea unless the record demonstrates that it abused its discretion. Id.; State v. Drake, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986).

The defendant first contends that his guilty pleas were not understandingly entered, thereby rendering them manifestly unjust, because his trial attorney erroneously advised him he would only have to serve eighty percent of his sentence. He argues that this erroneous belief was a significant factor in his decision to plead guilty. However, we do not believe that Ms. Thompson's advice that the defendant's sentence would be served at eighty percent is significant because she corrected her mistake concerning the percentage he would be required to serve, telling the defendant before he pled guilty that he would have to serve one hundred percent of his sentence. In addition, the record reflects that at the guilty plea hearing, the prosecutor and the court stated that the defendant would be required to serve one hundred percent of his sentence. The defendant stated at the guilty plea hearing that no one had promised him any sentence other than that discussed at the hearing. The defendant's guilty pleas were not unknowingly entered because his attorney initially told him he would only be required to serve his sentence at eighty percent and, therefore, his guilty pleas are not manifestly unjust based on this claim.

The defendant next contends that his guilty pleas were involuntary because he was taking antidepressant medication. The trial court, however, found this claim by the defendant to be incredible, noting that the defendant stated at the guilty plea hearing that he was not taking any medication. In addition, the defendant said he was not suffering from any mental illness at the hearing. Moreover, both of the defendant's trial attorneys said that he seemed to understand the proceedings and did not appear to be mentally incompetent. There is no evidence, outside the defendant's own testimony at the withdrawal hearing, that his medication rendered him incompetent or mentally unable to understand his plea agreement. The record supports the trial court's finding that the defendant's guilty pleas were not manifestly unjust because he was taking antidepressant medication.

The defendant asserts that his pleas were unknowingly and involuntarily entered because he was given erroneous advice on whether he could waive eighteen months of pretrial jail credit. Because of conflicting information the defendant received about pretrial jail credit and because it is illegal to waive this credit, we do not believe that the defendant's plea could have been understanding to any appreciable degree when he waived his right to the credit at the guilty plea hearing. At the motion to withdraw hearing, Ms. Thompson acknowledged that the defendant was very concerned about receiving pretrial jail credit, and the defendant testified that he thought he would somehow get credit and only found out after his pleas that he would not. Ms. Thompson said that she told the defendant that although he was agreeing to waive the jail credits, she believed he could get them back at some point in the future because she believed jail credits were automatic. The record reflects, however, that the trial court and the prosecutor believed that a defendant was allowed to waive pretrial jail credit and that they told the defendant at the guilty plea hearing that he was waiving his. Thus, the record shows that while the trial court and the prosecutor told the

defendant he was waiving his pretrial jail credit, Ms. Thompson was telling him that pretrial jail credit was mandatory and that he could get it back at some point in the future. In addition, as stated above, a defendant is not allowed to waive pretrial jail credit. This renders any attempted waiver of pretrial jail credit necessarily unknowing because a defendant would not realize it was illegal to waive his credit. Under these circumstances, the defendant could not have understood his rights regarding his pretrial jail credit when he pled guilty to rape of a child.

In consideration of the foregoing, we hold that the trial court should not have accepted the plea agreement waiving pretrial jail credit and that the trial court erred in denying the defendant's motion to withdraw his guilty pleas. We reverse the judgments of conviction and remand the case to the trial court for appropriate disposition.

_____
JOSEPH M. TIPTON, JUDGE