# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 5, 2012

## MONROE MANGIUM, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Haywood County**
**No. 4834B     Clayburn L. Peeples, Judge**

---

**No. W2012-00315-CCA-R3-PC  - Filed January 15, 2013**

---

Petitioner, Monroe Mangium, pled guilty to attempted first degree murder, especially aggravated kidnapping, and aggravated robbery.  He received agreed sentences of twenty years at one-hundred percent for attempted first degree murder, twenty years at one-hundred percent for especially aggravated kidnapping, and ten years at thirty percent for aggravated robbery to be served concurrently for an effective twenty-year sentence.  In this appeal from the denial of post-conviction relief, Petitioner asserts that his guilty plea was not knowing and voluntary because he received ineffective assistance of counsel. More specifically, he argues that counsel failed to investigate his case by not interviewing Randy Tyus, Tony Hammond, or other potential witnesses listed by the State.  After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn.R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

J. Daniel Rogers, Medina, Tennessee, for the appellant, Monroe Mangium, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jerald Campbell, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

At the post-conviction hearing, Petitioner testified that he received ineffective assistance of counsel during the "pre-conviction stages" of his case. He said that he gave trial counsel a letter from Randy Tyus indicating that Mr. Tyus was forced to say that Petitioner committed the offenses, and he would have also testified in court that he did not know Petitioner. Concerning trial counsel, Petitioner testified:

> Because I feel that, you know, - - at the time, you know, I was just constantly going back and forth with about six or seven different lawyers that wouldn't do nothing for me, so it was like put me in a situation. He told me once I get the evidence, you know, showing that, you know, I have someone that would tell where I was at and stuff like that that he would help me, but once I give him those things he never did and it just - - he wasn't coming to see me no more or nothing, so I really didn't know what was going on. I didn't know anything about the law. All I was hearing from the investigators was that, you know, that the only thing that's right for me to do is to take this plea, you know, so I didn't know really what to do, you know. I really was scared, you know, 'cause I didn't know that procedure to follow to go through.

Petitioner testified that he pled guilty because he "wasn't really informed," and trial counsel told him that the statement from Mr. Tyus "wasn't gonna do me no good" and that it was in his best interest to enter the plea. Petitioner testified that he also gave trial counsel a statement from Tony Hammond.

On cross-examination, Petitioner testified that he had a total of four or five different attorneys before entering the plea. However, he was certain that he gave the two letters to trial counsel at the county jail. Petitioner felt that if he had gone to trial and the letters were introduced as evidence, he would not have been convicted. He acknowledged that he was arrested for the offenses in April of 2002, and he pled guilty in February of 2005. Petitioner claimed that he received the letter from Mr. Tyus shortly after Mr. Tyus pled guilty in September of 2003 and went to prison. He said that he kept the letter for a few days to a week and gave it to trial counsel who was not appointed to his case until June of 2004. He did not keep a copy of the letter because he did not have access to a copy machine. Petitioner testified he learned of Tony Hammond, an alibi witness, about that same time. On redirect examination, Petitioner testified that he was led to plead guilty as a result of trial counsel not following up on leads that Petitioner gave to him.

Trial counsel testified that he was hired to represent Petitioner in June of 2004, and Petitioner entered his plea in February of 2005. He met with Petitioner on two or three occasions. Trial counsel testified that any information Petitioner gave to him was followed up on by himself and the investigator appointed to the case. Although trial counsel remembered hearing of an alibi witness, he never received anything concerning the witness. He was never given a letter written by Mr. Tyus.

Trial counsel testified that it was Petitioner's decision to plead guilty. He said that if he would have received information from an alibi or a co-defendant indicating that Petitioner was not present at the time of the offenses, he would have advised Petitioner to proceed to trial. He reviewed with Petitioner the "pros and cons" of going to trial and the weight of the evidence against Petitioner, and Petitioner chose to plead guilty.

On cross-examination, trial counsel testified that he did not recall receiving a letter from Mr. Tyus, and his file did not reflect such a letter. He said that Tony Hammond's name was never a part of his investigation or discussions with Petitioner. Trial counsel testified that his investigator in the case went out and took statements from Jacqueline and Jermain Watkins, a mother and child. He anticipated Jermain being a potential witness if the case went to trial. Trial counsel thought that the investigator also interviewed the victim in the case but did not obtain a written statement.

## II.    Timeliness of the Notice of Appeal

The State argues that Petitioner's appeal in this case is untimely because Petitioner failed to file his notice of appeal within 30 days of the judgment appealed from as required by Tennessee Rule of Appellate Procedure 4(a). Pursuant to that rule, a notice of appeal document shall be filed within thirty days after entry of the judgment from which an appeal is sought. "[I]n all criminal cases, the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). This Court may review untimely appeals and determine whether the notice requirement should be waived. Tenn. R. App. P. 4(a). Waiver is not automatic and should only occur when "the interest of justice" mandates waiver. To hold otherwise, by summarily granting waiver whenever confronted with untimely notices, renders the thirty-day requirement a legal fiction and circumvents the rule. *See Michelle Pierre Hill v. State,* No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., Feb. 13, 1996). In determining whether waiver is appropriate, this Court shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case. *Ronald McCray v. State*, No. W2006-00053-CCA-R3-HC, 2006 WL 1063684, at *1 (Tenn. Crim. App., April 21, 2006).

Here, the record reflects that the trial court denied the petition for post-conviction relief on March 21, 2011, and entered an order on April 5, 2011. An identical order was entered on January 10, 2012. Petitioner's counsel then filed a notice of appeal on February 8, 2012. Concerning the untimely notice of appeal, Petitioner in his reply brief indicates that the initial order denying the petition did not contain a certificate of service as required by "Local Rule 5.02 of the Circuit Court for the Twenty-Eighth Judicial District of Tennessee." According to counsel's affidavit, attached to the brief, he states that he was "unaware that an Order had been prepared or submitted for [post-conviction court's] signature until after the time had run for the timely filing of a Notice of Appeal." Post-conviction counsel further states "Upon learning that an Order had been entered, I held a conference with [the prosecutor] and [post-conviction court] in which I explained to them that I had not received a copy of the Order, and was unaware that it had been filed or entered." The affidavit reflects that the post-conviction court then "suggested that [the prosecutor] prepare an identical Order, this time including a certificate of service," and submit the order for the court's signature. The new order was filed on January 10, 2012, and the certificate of service was dated January 6, 2012. As noted above, Petitioner filed his notice of appeal on February 8, 2012.

As pointed out by the State, a trial court's judgment becomes final 30 days after the entry of the judgment, unless a notice of appeal or a post-trial motion is filed. Tenn. R. App. P. 4(a); *State v. Boyd*, 51 S.W.3d 206, 211 (Tenn. Crim. App. 2000). After that, the trial court loses jurisdiction over the matter. *Id*. However, if the first order was inappropriately entered without compliance with statutory mandates, jurisdiction would not be lost.

In his argument that the timely filing of the Notice of Appeal in his case should be waived, Petitioner directs our attention to Tennessee Code Annotated section 40-30-112. This statute gives a *mandatory* directive to the clerk of the post-conviction court regarding the service of copies of the final judgment in a post-conviction proceeding, and states as follows:

> **40-30-112. Notice of final judgments by clerk of court**. - The clerk of the court *shall* send a copy of the final judgment to the petitioner, the petitioner's counsel of record, any authority imposing restraint on the petitioner and the attorney general and reporter at Nashville. (emphasis added).

The first order entered by the post-conviction court was signed by the judge of the post-conviction court, and the order had no certificate of service signed by the clerk indicating compliance with Tennessee Code Annotated section 40-30-112. The word "shall" means mandatory compliance. *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965)("[W]hen the word 'shall' is used in constitutions or statutes it is ordinarily construed as being

mandatory and not discretionary."). Our General Assembly spoke clearly when it enacted Tennessee Code Annotated section 40-30-112, and the clerks of the courts must comply with all of its provisions. The first order was inappropriately entered by the clerk filing the order without compliance with Tennessee Code Annotated section 40-30-112. Thus, we shall address the merits of this appeal.

## III.    Ineffective Assistance of Counsel

On appeal, Petitioner asserts that he received ineffective assistance of counsel in association with his guilty plea because trial counsel failed to adequately investigate his case by not interviewing Randy Tyus, Tony Hammond, or other potential witnesses listed by the State.

Concerning this issue, the post-conviction court held:

The Court finds [trial counsel's] testimony completely believable and both by virtue of his demeanor on the stand and the logic of what he said, but also because of the circumstances of this case. It seems clear, even if there were a question, that any good attorney and [trial counsel] is far more than a good attorney - - any adequate attorney would have jumped on that information and at least explored it.

The Court's belief is that the information was never given to [trial counsel].

It's clear from the evidence that [trial counsel] fully explained [Petitioner's] rights with regard to going to trial or not going to trial and [trial counsel] made what appeared to the Court at the time and still appears to the Court to be a good decision in his own behalf in choosing to accept the agreement that the State offered him, so [Petitioner], your Petition is denied.

The record supports the post-conviction court's findings. Initially, we point out that since the transcript of the guilty plea submission hearing is not in the record, there is nothing to support Petitioner's assertion of an involuntary plea in light of the fact that the post-conviction court implicitly determined that Petitioner was not credible in his testimony. Trial counsel testified that any information Petitioner gave to him was followed up on by himself and the investigator in the case. Although trial counsel remembered hearing of an alibi witness, he never received any specific information concerning the witness. He was never given a letter written by Mr. Tyus, and his file did not reflect the existence of such a letter. He also said that if he would have received information from an alibi or a co-defendant indicating that Petitioner was not present at the time of the offenses, he would have advised

Petitioner to proceed to trial. He reviewed with Petitioner the "pros and cons" of going to trial and the weight of the evidence against Petitioner, and Petitioner chose to plead guilty. Trial counsel said that Tony Hammond's name was never a part of his investigation or discussions with Petitioner. Trial counsel testified that the investigator appointed to the case went out and took statements from Jacqueline and Jermain Watkins, a mother and child. He anticipated Jermain as being a potential witness if the case went to trial. Trial counsel thought that the investigator also interviewed the victim in the case but did not obtain a written statement.

We also point out that Petitioner failed to call Randy Tyus, Tony Hammond, or any other potential witnesses to testify at the post-conviction hearing. It has long been held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This Court may not speculate as to their testimony. *Id.*

Petitioner has failed to establish by clear and convincing proof that trial counsel's performance in association with his guilty plea was deficient or that he was prejudiced by any alleged deficiencies. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE