IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2015

# STATE OF TENNESSEE v. SAMUEL L. GIDDENS, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-1184      Cheryl Blackburn, Judge**

**No. M2014-01505-CCA-R3-CD - Filed February 20, 2015**

A Davidson County jury convicted the Defendant, Samuel L. Giddens, Jr., of reckless homicide, attempted especially aggravated robbery,[1] and aggravated burglary, and the trial court sentenced him to an effective sentence of fourteen years in prison. The Defendant appealed his conviction and sentence, and this Court affirmed the trial court's judgments. *See State v. Samuel L. Giddens, Jr.*, No. M2005-00691-CCA-R3-CD, 2006 WL 618312, at *1 (Tenn. Crim. App., at Nashville, Mar. 13, 2006), *perm. app. denied* (Tenn. June 26, 2006). After filing several motions, all of which were dismissed or denied, the Defendant filed a motion pursuant to Tennessee Rule of Appellate Procedure 36.1 seeking to correct an illegal sentence. The trial court denied the Defendant's motion. On appeal, the Defendant contends that the trial court erred because he should be awarded additional pretrial jail credits. He further contends that his sentence for attempted especially aggravated robbery is not constitutional as it violates provisions against Double Jeopardy and that the resulting sentence is, therefore, not authorized. After a thorough review of the record and applicable authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Samuel L. Giddens, Jr., Nashville, Tennessee, pro se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrew C. Coulam, Assistant

---

[1]We note that the judgment of conviction for this offense lists "Att. Esp. Agg. Homicide." From the record it appears that this was a typographical error and should instead be "Attempted Especially Aggravated Robbery."

Attorney General; Glenn R. Funk, District Attorney General; Kathy Morante, Assistant District Attorney General, for the appellant, State of Tennessee.

## OPINION

### I. Facts and Procedural History

This case arises from the burglary and shooting death of the victim, Larry Gamble. The Defendant was indicted for one count of first degree premeditated murder (Count 1), one count of felony murder (Count 2), two counts of especially aggravated robbery (Counts 3 and 4), two counts of attempted first degree murder (Counts 5 and 7), one count of attempted especially aggravated robbery (Count 6), one count of aggravated burglary (Count 8), one count of possession with the intent to sell over .5 grams of a Schedule II substance (Count 9), and one count of unlawful possession of a Schedule VI substance (Count 10).

### A. Trial

In our opinion on the Defendant's appeal of the dismissal of his petition for post-conviction relief, this Court provided a brief summary of the evidence presented at trial:

Police responded to a call at an apartment, where they found Kevin Johnson holding a bloody cloth against his stomach. Johnson told officers that he and others had been shot. Officers found in the apartment another man who had been shot in the back, and a third man, Larry Gamble, who was dead, lying on top of the [Defendant], who was still alive.

Johnson testified that he was at the apartment with Charles Duane Thomas, Gamble, his mother, and his two nieces, when he heard a knock at his door. Johnson answered and saw John W. Brewer, III, the [Defendant's] co-defendant, at the door. Brewer asked Johnson for cocaine, and Johnson responded that he did not have any. Johnson admitted that he had previously sold drugs from his apartment. Johnson said he saw the [Defendant] standing in the driveway, and he asked Brewer who was in the driveway. At this point, Brewer pulled out a gun, pointed it at Johnson, and said "get down, . . . you know what this is." Johnson complied, and the [Defendant] came onto the porch displaying a gun. Brewer demanded money, and Johnson gave him the contents of his pockets. Johnson said he informed Brewer and the [Defendant] that the apartment contained multiple people, Brewer told him to be quiet or Brewer would kill everyone. Brewer then put his gun to Johnson's side, the [Defendant] put his gun to the back of Johnson's head, and the three men entered the apartment.

2

Inside, Brewer asked Johnson for money, pushed him to the floor, and told everyone not to move or he would shoot. Brewer told Johnson to search Thomas, during which time Brewer pointed the gun alternatively at Gamble and Johnson. Gamble jumped across the table in an attempt to take the [Defendant's] gun, and Brewer started shooting. Johnson tried to grab Brewer, and Brewer shot him. Johnson fell back and heard three more gun shots. He assumed Brewer was out of bullets when the shooting stopped, so he tried to grab Brewer, who ran out of the back door. Johnson called 911 and then collapsed.

Thomas, who was sleeping when Brewer and the [Defendant] came into the apartment, was awakened when the [Defendant] told Thomas to get on the ground. Thomas complied and heard two mens' voices and felt someone pat him down and take his wallet. Thomas saw Gamble jump up and grab the [Defendant]. When the two men finished wrestling, Thomas saw the [Defendant's] face and saw a gun on the floor by the [Defendant] and Gamble.

When police arrived, they found the [Defendant] shot and lying underneath Gamble. The [Defendant] was transported to the hospital, where nurses found some crack cocaine and marijuana in his pockets. The [Defendant] told police that he went to Johnson's residence to purchase drugs. While waiting in the driveway, a masked man took them inside the residence at gun point and demanded money. The [Defendant] said he heard gun shots and took out a .357 magnum gun but did not recall whether he fired his weapon. Thomas was also transported to the hospital, and, after he was released, he identified the [Defendant] from a photographic line-up.

The medical examiner retrieved .22 caliber bullets from Gamble's body, and the bullet removed from the [Defendant] was a .38, .357 magnum class. The medical examiner said that both of Gamble's wounds were created by a gun fired from more than two feet away. Gamble had smoked marijuana within several hours of his death. Police did not recover the guns used to shoot Gamble or the [Defendant]. The gun they retrieved from the scene did not fire any of these bullets.

Police found near the apartment a car that looked "suspicious" because no witnesses knew to whom the car belonged and because there was mud smeared all over the license plate. Police used the Vehicle Identification Number to determine the car belonged to the [Defendant]. Both Brewer's and the [Defendant's] fingerprints were found on the trunk of the car.

3

*Samuel L. Giddens, Jr. v. State*, No. M2009-00699-CCA-R3-PC, 2010 WL 2787712, at *1-2 (Tenn. Crim. App., at Nashville, July 14, 2010), *perm. app. denied* (Tenn. Dec. 8, 2010).

At the conclusion of the State's proof, the Defendant moved for a judgment of acquittal as to the charges of especially aggravated robbery because the State failed to produce any evidence at trial that a theft had occurred. *See State v. Samuel L. Giddens, Jr.*, No. M2005-00691-CCA-R3-CD, 2006 WL 618312, at *1-6 (Tenn. Crim. App., at Nashville, Mar. 13, 2006), *perm. app. denied* (Tenn. June 26, 2006). The trial court granted the Motion for Judgment of Acquittal on the indicted offenses, but it allowed the jury to consider the lesser-included offenses of attempted especially aggravated robbery. *Id.* The jury found the Defendant guilty of the reckless homicide of Larry Nathaniel Gamble, guilty of the attempted especially aggravated robbery of Charles Duane Thomas, and guilty of the aggravated burglary of the habitation of Kevin Orlando Johnson. *Id.* at *6.

The Defendant appealed his conviction to this Court contending that: (1) the evidence at trial was insufficient to support the jury's verdict; (2) the trial court improperly instructed the jury on the issue of criminal responsibility; (3) the Defendant's convictions for attempted especially aggravated robbery and aggravated burglary violated principles of double jeopardy; (4) the trial court erred when it allowed a witness to testify as to the alleged statement made by a co-defendant; and (5) the trial court improperly enhanced the Defendant's sentences and improperly imposed consecutive sentences. *Id.* at *1. This Court affirmed his convictions and sentence. *Id.*

## B. Post-Conviction Proceedings

The record reflects that, on October 5, 2009, after this Court affirmed the trial court's judgment and sentence, the trial court entered an amended judgment reflecting that the Defendant should be awarded pretrial jail credits from March 31, 2002, to December 30, 2002.[2]

The Defendant filed a petition for post-conviction relief in which he alleged that he had received the ineffective assistance of counsel because: (1) his trial counsel did not hire a private investigator; (2) his trial counsel allowed highly prejudicial hearsay evidence to be introduced into evidence; (3) his trial counsel had a "questionable attitude" toward the preparation of his defense; and (4) his trial counsel failed to ask the trial court to "waive all the applicable lesser included offenses [of theft] from being presented to the jury." The post-

---

[2]This amended judgment appears in the record as an exhibit to the Defendant's motion to correct his illegal sentence. It is unclear from the record whether this was entered in response to a motion by the Defendant or sua sponte.

conviction court appointed him counsel, held a hearing, and then dismissed the petition. The Defendant appealed. *Giddens*, 2010 WL 2787712, at *1.

On appeal, this Court reviewed the evidence presented at the trial and during the post-conviction proceedings and affirmed the post-conviction court's dismissal of the petition for post-conviction relief. *Id.*

The Defendant filed a petition for habeas corpus relief in the United States District Court. *Samuel L. Giddens, Jr. v. Barbee*, No. 3:11-0005, 2011 WL 1627344. At *1 (M.D. Tenn. Apr. 29, 2011). In his petition for habeas corpus relief, the Defendant contended:

The petition contains four claims for relief. These claims include:

(1) the constructive amendment of counts 3 and 4 of the indictment resulted in an impermissible variance that deprived the petitioner of adequate notice to defend against the lesser included charge of especially aggravated robbery;

(2) count 4 of the indictment did not give the petitioner sufficient notice of the charge against him;

(3) a violation of the Confrontation Clause arose when a witness (Detective Joe Williams) was allowed to testify about statements made by [the Defendant's] co-defendant; and

(4) the [Defendant] was placed in double jeopardy when the trial judge allowed both counts 6 and 8 of the indictment to go to the jury.

*Id.* at *1. The federal court concluded:

The [Defendant] has offered no clear and convincing evidence to rebut the presumption of correctness that must be accorded the factual findings made by the state courts. 28 U.S.C. § 2254(e)(1). Nor has the [Defendant] demonstrated in what way the legal analysis of the state courts runs contrary to federal law. Accordingly, the [Defendant] has failed to set forth a claim worthy of habeas corpus relief. In the absence of an actionable claim, the instant petition for writ of habeas corpus has no merit.

*Id.* at *5.

The Defendant then filed a motion "Nuc Pro Tunc" in the trial court seeking an

5

amended judgment to increase his pretrial jail credits. *State v. Samuel L. Giddens*, No. M2012-00858-CCA-R3-CD, 2013 WL 1953498, at *1 (Tenn. Crim. App., at Nashville, May 13, 2013), *no Tenn. R. App. P. 11 application filed.* The Defendant contended:

> that he was taken into custody at the county jail on the date of the offenses (March 13, 2002), "then later transferred to the state penitentiary still in confinement awaiting to be tried on case no. 2002-B[-]1184. In addition to asserting that he is entitled to 459 additional days of pre-trial jail credit, [the Defendant] alleged in his motion that the pre-trial jail credit which he was granted by an amended judgment in October, 2009, was erroneously applied at that time to a sentence he had already served (Count 8).

*Id.*

As to the argument that the Defendant was entitled to pretrial jail credits from December 31, 2002, through April 2, 2004, the trial court found:

> [the Defendant] was transferred to the Tennessee Department of Correction on December 30, 2002, in order to allow the [Appellant] to begin serving a nine (9) year and six (6) month sentence, in Case Number II-1100-367, for a drug conviction out of Williamson County. The court finds that the [Defendant's] conviction[s] out of this Court [were] ordered to run consecutively to the sentence out of Williamson County. The Court finds that the [Defendant] is not [] entitled to any pretrial jail credit after December 30, 2002, as he was serving a sentence in another unrelated case.

*Id.*

Our opinion reviewing the trial court's ruling noted that these findings by the trial court did not contradict the Defendant's allegations in his motion. *Id.* We further noted that the trial court found, about the Defendant's second contention, that the pretrial jail credits actually awarded in the amended judgment were only applied to the sentence in Count 8, which by then had already been served, and that the amended judgment applied to both counts 2 and 8. *Id.* The trial court concluded that the expiration of the sentence in Count 8 "did not impact [the Defendant's] award of pretrial jail credit, as the jail credit was calculated to reduce his release eligibility date." *Id.* The Defendant contended in his briefs before this Court that he may only be entitled to additional pretrial jail credit from December 31, 2002 through May 31, 2003, rather than April 2, 2004. *Id.*

After review, this Court held:

In summary, [the Defendant's] motion was not one to correct a clerical error as defined by *Cantrell [v. Easterling,* 346 S.W.3d 445, 449 (Tenn. 2011)]. As such, [the Defendant] did not have a right of appeal from the trial court's order pursuant to Tennessee Rule of Appellate Procedure 3(b). His motion, in essence, was one contemplated by new Tennessee Rule of Criminal Procedure 36.1, but that rule is not in effect until July 1, 2013. As such, this appeal must be dismissed.

Predictably, on July 11, 2013, shortly after the effective date of the new Rule, the Defendant filed a motion pursuant to Tennessee Rule of Criminal Procedure 36.1 to correct his illegal sentence. The Defendant filed a second "Motion to Correct Illegal Sentence Consolidation" on November 15, 2013, which provided documentation allegedly supporting his contentions. The trial court appointed him counsel. In the Defendant's motion, he contended that: (1) his ten year sentence for attempted especially aggravated robbery was illegal because it violated double jeopardy; (2) his ten year sentence for attempted especially aggravated robbery is not authorized under the sentencing scheme "of the acquittal"; and (3) his sentence is illegal because the trial court failed to award him pretrial jail credits.

On May 23, 2014, the trial court recused itself based upon its familiarity with the procedural matters involved in this case. In the "interest of justice" and to "avoid the appearance of any impropriety" the trial court reassigned the case to Division III of the criminal court.

The trial court, Division III, denied the Defendant relief. In its order, the trial court listed the offenses for which the Defendant was tried and resulting convictions and/or acquittals. It then found:

> As demonstrated [by the chart listing the offenses and resulting convictions], [the] Defendant was acquitted of one count of especially aggravated robbery (Count 3), but he was convicted of attempted especially aggravated robbery, as the lesser included offense for Count 4. The Verdict Form reflects that the robberies at issue in Counts 3 and 4 involved different victims, Larry Gamble and Charles Thomas, respectively.[FN3] Accordingly, Counts 3 and 4 are distinctly different offenses; Double Jeopardy does not apply. [FN 4]
>
>> FN 3 A detailed factual summary is set forth in the appellate decision. <u>Giddens</u>, 2006 WL 618312, at *2-6.
>>
>> FN 4 This Court notes that Defendant pursued Double

Jeopardy claims on his direct appeal but then he argued that he could not be charged of the attempted especially aggravated robbery of Kelvin Johnson (Count 6) and the aggravated burglary of Mr. Johnson's home (Count 8). The appellate court engaged in a length[y] Double Jeopardy analysis, finding no violation because attempted especially aggravated robbery and aggravated burglary are not the "same" offense for double jeopardy purposes. Giddens, 2006 SL 618312, at *13. The Court noted that "In the case under submission, the Defendant's actions were discrete acts with different evil purposes. The Defendant entered the home with plans to commit a felony, and, once inside the home, the Defendant committed a separate offense while taking Thomas's wallet and wrestling with Gamble. Therefore, the Defendant is not entitled to relief on this issue." Id.

[The] Defendant alleges that he is pursuing his instant petition in light of Rule 36.1 of the Tennessee Rules of Criminal Procedure. In a different appeal for this same case (i.e., [the] Defendant's appeal regarding jail credit application), the appellate court explicitly found that Rule 36.1 is inapplicable to [the] Defendant's case as it did not take effect until approximately eight years after [the] Defendant's conviction became final. Giddens 2013 WL 1953498, at *4.

Rule 36.1 addresses illegal sentences. In this case the jury found [the] Defendant not guilty of the indicted offense especially aggravated robbery (Count 4) but did find him guilty of *attempted* especially aggravated robbery. Attempt is a lesser included offense that may be charged to the jury if the facts are sufficient to support the instruction. . . . Here, as set forth in the Court of Criminal Appeals' affirmation of the trial court judgment, the facts at trial justified the instruction. . . .

Here, [the] Defendant argues that the trial court inappropriately instructed the jury as to the lesser included offenses. This issue was previously litigated on direct appeal; the appellate court found the trial court's lesser-included offense instruction proper. . . .

Accordingly, the Court finds that [the] Defendant's claims lack merit. Defendant has attempted to relitigate the legality of his 10-year sentence for his attempted especially aggravated robbery conviction through a variety of

styled pleadings. The record reflects, however that [the] Defendant was convicted properly of the lesser included offense after [a] jury trial, and he was sentenced within the appropriate range. Additionally, his jail credits have been verified; [the] Defendant has been awarded all earned jail credit.

(some citations omitted).

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) his sentence is illegal due to the trial court's failure to award him pretrial jail credits; (2) his ten year sentence for attempted especially aggravated robbery is not authorized under the "applicable Statutory scheme of the Fifth Amendment Constitutional right of Protection against Double Jeopardy"; and (3) his ten year sentence for attempted especially aggravated robbery is not authorized under the "applicable Statutory scheme of the Acquittal – First jury instruction of the Tennessee and United States Constitution."

On July 1, 2013, Tennessee Rule of Criminal Procedure 36.1 became effective. Rule 36.1 provides in pertinent part that:

(a) Either the defendant or the state may, at any time, seek the correction of an illegal sentence by filing a motion to correct an illegal sentence in the trial court in which the judgment of conviction was entered. For purposes of this rule, an illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute.

(b) Notice of any motion filed pursuant to this rule shall be promptly provided to the adverse party. If the motion states a colorable claim that the sentence is illegal, and if the defendant is indigent and is not already represented by counsel, the trial court shall appoint counsel to represent the defendant. The adverse party shall have thirty days within which to file a written response to the motion, after which the court shall hold a hearing on the motion, unless all parties waive the hearing.

Tenn. R. Crim. P. 36.1(a), (b) (2014). On its face, Rule 36.1 does not limit the time within which a person seeking relief must file a motion, nor does it require the person seeking relief to be restrained of liberty. Interpreting this Rule, this Court has found it retroactively applicable to claims of an illegal sentence when a defendant was sentenced before the

effective date of the Rule, July 1, 2013. *See Kevin Daws v. State*, No. W2014-01002-CCA-R3-CO, 2015 WL 112787 (Tenn. Crim. App., at Jackson, Jan. 8, 2015) (holding the Defendant, convicted in 1999, was not entitled to relief because he did not present a "colorable claim"), *no Tenn. R. App. P. 11 application filed*; *State v. David Morrow*, No. W2014-00338-CCA-R3-CO, 2014 WL 3954071, at *2 (Tenn. Crim. App., at Jackson, Aug. 13, 2014) (reversing summary dismissal of Rule 36.1 motion for defendant who filed his motion in August 2013 and whose conviction was entered before July 1, 2013), *no Tenn. R. App. P. 11 application filed*; *see State v. Sean Blake*, No. W2014-00856-CCA-R3-CO, 2015 WL 112801, at *1 (Tenn. Crim. App., at Jackson, Jan. 8, 2015) (holding that, even though defendant's sentence had expired seven years before he filed is Rule 36.1 motion in 2014, he was still entitled to seek relief pursuant to that Rule if he stated a "colorable claim" for relief noting that the language of the rule stated that a defendant "may, at any time, seek the correction of an illegal sentence . . . ."), *no Tenn. R. App. P. 11 application filed*; *but see State v. Adrian R. Brown*, No. E2014-00673-CCA-R3-CD, 2014 WL 5483011, at *5 (Tenn. Crim. App., at Knoxville, Oct. 29, 2014) (holding that because the defendant's sentences had been fully served his motion to correct any illegality in the failure to award pretrial jail credits was moot), *no Tenn. R. App. P. 11 application filed.*

Rule 36.1 does not define the term "colorable claim." In interpreting Rule 36.1, this Court has looked to post-conviction and habeas corpus relief cases for guidance. For example, this Court has adopted the definition for "colorable claim" from the post-conviction context: "A colorable claim is a claim . . . that, if taken as true, in the light most favorable to the [defendant], would entitle [defendant] to relief . . . ." *Morrow*, 2014 WL 3954071, at *2 (citing Tennessee Supreme Court Rule 28, § 2(H)).

In accordance with this interpretation of the law, we conclude that the Defendant in this case is not precluded from seeking correction of his allegedly illegal sentence because he was sentenced before the inception of Rule 36.1. He is still currently incarcerated serving the sentences that he claims are illegal based on the trial court's alleged failure to award him sufficient pretrial jail credit. We disagree with the trial court's interpretation of our previous holding to the extent that it relies upon it to find that the Defendant is not entitled to file a Rule 36.1 claim because he was sentenced before the effective date of the new law. We turn, therefore, to address whether the Defendant has presented a "colorable claim" that he has not been awarded all applicable pretrial jail credits.

The Defendant was incarcerated on March 13, 2002, for the offenses in this case. He remained incarcerated on these charges until December 30, 2002. The Defendant concedes that on December 30, 2002, the State transferred him to the Department of Correction in connection with prior drug-related convictions. He argues, however, that his direct appeal of the drug-related convictions was not denied until June 10, 2003, and that, therefore, the

10

period of confinement between December 30, 2002, and June 10, 2003, should count as pretrial jail credit for his convictions in this case.

The Defendant here asserts that he was not properly awarded pretrial jail credit. Under Tennessee Code Annotated section 40-23-101(c):

> The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail or juvenile court detention prior to waiver of juvenile court jurisdiction, or county jail or workhouse, pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in the jail, workhouse or penitentiary subsequent to any conviction arising out of the original offense for which the defendant was tried.

T.C.A. § 40-23-101(c) (2010). This language makes the award of pretrial jail credit mandatory and not discretionary. *Tucker*, 335 S.W.3d at 123 (citing *Stubbs v. State*, 216 Tenn. 567, 393 S.W.2d 150, 154 (1965)). "It is only when the time spent in jail or prison is due to or, as the statute says, 'arises out of' the offense for which the sentence against which the credit is claimed that such allowance becomes a matter of right." *Id.* (quoting *Trigg v. State*, 523 S.W.2d 375, 376 (Tenn. Crim. App. 1975)). Unauthorized sentences in direct contravention of an applicable statute are " illegal as opposed to merely erroneous." *Davis v. State*, 313 S.W.3d 751, 759 (Tenn. 2010). Accordingly, a judgment which does not award proper pretrial jail credits is contrary to statute and void. *Tucker*, 335 S.W.3d at 123. Such a judgment, being in direct contravention of an applicable statute, falls within the ambit of Tennessee Rule of Criminal Procedure 36.1. In order to establish that the trial court's action was contrary to statute, the appellant must show that (1) he was incarcerated "pending arraignment and trial" or "subsequent to any conviction" on the offense at issue, and (2) that the trial court failed to award the credit on the judgment. *Tucker*, 335 S.W.3d at 124.

Prior to the effective date of this Rule, filing a habeas corpus action was the proper avenue to obtain redress for a sentence which was illegal due to a failure to award pretrial jail credits. *Summers v. State*, 212 S.W.3d 251, 256 (Tenn. 2007); *Moody v. State*, 160 S.W.3d 512, 516 (Tenn. 2005). In order to succeed with such a petition, a defendant or petitioner was required to support the claim with documentation establishing the illegality of the sentence. *Summers*, 212 S.W.3d at 261.

Taking all of the Defendant's assertions as true and viewing them in the light most

11

favorable to him, we have determined that he has not presented a colorable claim for relief from an illegal sentence because his pretrial incarceration did not "arise[] out of" the offense for which he was eventually convicted. *See* T.C.A. § 40-23-101(c). "[T]his Court has repeatedly held that Tennessee Code Annotated section 40-23-101(c) only provides for credit against a sentence if the reason for the incarceration arises from the offense for which the sentence was imposed." *State v. William Shane Bright*, No. E2006-01906-CCA-R3-CD, 2007 WL 1259176, at *4 (Tenn. Crim. App., at Knoxville, Apr. 30, 2007) (citing *State v. Abernathy*, 649 S.W.2d 285, 286 (Tenn. Crim. App. 1983)), *no Tenn. R. App. P. 11 application filed*; *see Majeed v. State*, 621 S.W.2d 153, 155 (Tenn. Crim. App. 1981); *Trigg*, 523 S.W.2d at 376). In addition, the "primary purpose" of pretrial jail credits is fairness to indigent defendants unable to post bond, so if a defendant is incarcerated on other charges, the purpose for granting pretrial jail credits is not served. *Id.* (citing *State v. Watkins*, 972 S.W.2d 703, 705 (Tenn. Crim. App. 1998); *State v. Silva*, 680 S.W.2d 485, 486 (Tenn. Crim. App.1984); *Abernathy*, 649 S.W.2d 285, 286)). "[T]his Court has repeatedly rejected 'double dipping' for credits from periods of continuous confinement for two separate and unrelated charges." *State v. Jermain Sean Lipford*, No. M2011-00137-CCA0R3-CD, 2012 WL 4327207, at *2 (Tenn. Crim. App., at Nashville, Sept. 19, 2012) (citing *State v. Michael Bikrev*, No. M2001-01620-CCA-R3-CD, 2002 WL 170734 (Tenn. Crim. App., at Nashville, Feb. 4, 2002) and *State v. Frederick Cavitt*, No. E1999-00304-CCA-R3-CD, 2000 WL 964941 (Tenn. Crim. App., at Knoxville, July 13, 2000)), *no Tenn. R. App. P. 11 application filed*.

In this case, the record shows, and the Defendant concedes, that on December 30, 2002, he was transferred to the Department of Correction in connection with prior drug-related convictions. The fact that his appeal was still pending on those charges is of no consequence because the time that he served between December 30, 2002, and June 10, 2003, when his appeal was denied was ultimately credited toward his sentence for the drug-related convictions. He cannot have that time credited toward the sentences for his drug-related convictions and also toward his sentence for his convictions in this case. *See Lipford*, 2012 WL 4327207, at *2. Thus, because the Defendant's argument, even viewed in the light most favorable to him, is without merit, we conclude that he has not presented a colorable claim under Rule 36.1. Accordingly, the trial court properly summarily dismissed his petition. The Defendant is not entitled to relief on this issue.

The Defendant is also not entitled to relief based upon his assertion that his conviction for attempted especially aggravated robbery violates provisions protecting him from Double Jeopardy and that his resulting sentence for that conviction is, therefore, illegal. First, a Rule 36.1 motion is not the proper avenue to challenge this conviction. Further, this Court previously addressed the conviction and determined that it did not violate Double Jeopardy. *See Giddens*, 2006 WL 618312, at *10, *13.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's summary dismissal of the Defendant's Rule 36.1 motion to correct an illegal sentence.

_____

ROBERT W. WEDEMEYER, JUDGE